**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Rigoberto CASTELLANOS–GARCIA,
Defendant–Appellant.**

No. 00–50719.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Sept. 14, 2001

Filed Nov. 2, 2001

William Braniff, Law Offices of William Braniff, San Diego, California, for the defendant-appellant.

Deborah J. Rhodes, Assistant United States Attorney, San Diego, California, for plaintiff-appellee.

Before: FERNANDEZ, KLEINFELD, and McKEOWN, Circuit Judges.

FERNANDEZ, Circuit Judge:

Rigoberto Castellanos–Garcia was convicted of entering the United States after having been deported. 8 U.S.C. § 1326. He was given an enhanced sentence because he had committed an aggravated felony before his deportation. 8 U.S.C. § 1326(b). He appeals his conviction on the theory that the government did not prove that he was free from official restraint and, therefore, did not prove that he had entered the country. He appeals his sentence because the aggravated felony was not charged in the indictment. We affirm.

## BACKGROUND

On April 30, 2000, Supervisory Border Patrol Agent Carl A. Weiland discovered Castellanos walking north at least 100 yards from the border. Weiland, who had not seen Castellanos before that, approached and questioned him. Castellanos ultimately admitted that he was not a United States citizen and that he had come over the border fence, although he did not say where or when he had done so. Weiland did not see him do so, and did not see an indication that Castellanos had walked directly from the fence to the road on which he was found. As Weiland explained, he had just come upon Castellanos, and he had not been alerted to Castellanos's presence by anything or anyone else. He did not know where the other 15 (or more) border agents working that day were, and he was resistant to discussing the possible locations of any sensing devices on or about the border. When Weiland was cross-examined, the district court did not require him to answer questions about sensor location because it deemed that information to be irrelevant in light of the fact that there was no evidence that Weiland had obtained any information from those devices, if any there were at Castellanos's point of entry.

No further evidence was submitted by either side about Castellanos's exact point of entry, the placement of sensing devices, or whether Castellanos had been under observation from the moment of his entry

to the moment of his capture. Castellanos claimed, therefore, that he was entitled to an acquittal because the evidence was not sufficient to convict him. *See* Fed. R.Crim.P. 29. The district court rejected that claim, and Castellanos appealed. He raises a number of issues, which surround his claim regarding official observation, and one sentencing issue.

## STANDARD OF REVIEW

■ We review the district court's denial of the motion for acquittal under Rule 29 of the Fed.R.Crim.P. de novo. *United States v. Pacheco–Medina*, 212 F.3d 1162, 1163 (9th Cir.2000). "Consequently, this court must review the evidence presented against the defendant in the light most favorable to the government to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* (internal quotation marks and citation omitted). We review a district court's limitation of a defendant's cross examination of a witness for an abuse of discretion. *United States v. Bensimon*, 172 F.3d 1121, 1128 (9th Cir.1999); *Ins. Co. of N. Am. v. Gibralco, Inc.*, 847 F.2d 530, 534 (9th Cir. 1988).

■ " 'Whether a jury instruction misstates elements of a statutory crime is a question of law reviewed de novo.' " *United States v. Romo–Romo*, 246 F.3d 1272, 1274 (9th Cir.2001) (citation omitted). We review the district court's determination that a factual foundation does not exist to support a jury instruction proposed by the defense for an abuse of discretion. *United States v. Fejes*, 232 F.3d 696, 702 (9th Cir.2000); *United States v. Hairston*, 64 F.3d 491, 493 (9th Cir.1995); *United States v. Duran*, 59 F.3d 938, 941 (9th Cir.1995).

## DISCUSSION

The essential thrust of Castellanos's appeal is that, as a part of its case, the government always has the burden of submitting specific evidence to prove lack of official restraint, which would include constant observation. The other issues raised by Castellanos are subsidiary to that one. We will therefore take it up first.

### A. *Official Observation*

■ Under settled law, a person cannot be said to have been found in the United States, if he was under constant observation by governmental authorities from the moment he set foot in this country until the moment of his arrest. As we explained in *Pacheco–Medina*, 212 F.3d at 1163, "physical presence is not enough." Rather, the person must also enter, and in order to do that the person must be free from official restraint. *Id.* at 1164. But where a person is under constant observation or surveillance from the moment of his entry to the time of his capture, he is not free from official restraint. *Id.* at 1164–65.

■ Castellanos argues that in light of the above the government's evidence must show lack of official restraint. So much is true. *See United States v. Parga–Rosas*, 238 F.3d 1209, 1213 (9th Cir.2001); *United States v. Ruiz–Lopez*, 234 F.3d 445, 448 (9th Cir.2000). Nevertheless, in this case there was sufficient evidence of that lack, because Weiland testified that he did not see Castellanos cross the border, and there was no evidence to the contrary. Indeed, there was no evidence of the precise place where Castellanos had crossed; not even evidence that he had come in a straight line from the point of crossing to the point of his capture. Moreover, Weiland simply came upon Castellanos, and did not rely upon sensor or any other information for the purpose of locating

him. In the absence of contrary evidence, that certainly should be sufficient to fulfill the government's burden of showing that Castellanos was free to migrate into the general population for some time, and was not under constant observation during that period. *See Ruiz–Lopez*, 234 F.3d at 448; *United States v. Martin–Plascencia*, 532 F.2d 1316, 1317 (9th Cir.1976).

But, says Castellanos, because he mentioned the possibility that one of the 15 (or perhaps more depending on where he entered) other agents in the general area might have seen him and had him under observation, the government had to put in evidence to negate that possibility. There was not a scintilla of evidence to support the theory; mere speculation by Castellanos is not evidence. *See United States v. Andrews*, 75 F.3d 552, 556 (9th Cir.1996); *see also Poppell v. City of San Diego*, 149 F.3d 951, 954 (9th Cir.1998). A trial is not the place to explore the limits of imaginative musings; it is a place to decide facts based on evidence. Thus, even if the government would be required to come forward· with its own evidence to meet an evidence-based claim that Castellanos was being observed by an agent other than the one who captured him, it need not do so where all Castellanos offered was a free floating speculation that he might have been observed the whole time.[1]

Where we have found evidence that a person was under official restraint, we have not hesitated to reverse § 1326 convictions. *See, e.g., Ruiz–Lopez*, 234 F.3d at 448–49; *Pacheco–Medina*, 212 F.3d at 1166. This case is not like those. It is more like *United States v. Quintana–Torres*, 235 F.3d 1197 (9th Cir.2000), where we also recognized that the government may have to prove entry in a "found in" case. There the defendant claimed that the gov-

ernment must prove that he came onto our soil voluntarily, but provided no evidence that he had not done so. *Id.* at 1199–1200. We agreed that voluntariness was part of the government's case, but went on to say that, absent a showing to the contrary, discovery of the defendant in this country would allow a jury to infer that he was here voluntarily. *Id.* at 1200. As we put it: "[t]here is an inference [of voluntary entry] that a reasonable mind could accept as true beyond a reasonable doubt. To dispel the inference, the alien would have to demonstrate that one of the speculative possibilities of involuntary entry had actually taken place. Quintana made no such showing." *Id.* We took the same approach in *Parga–Rosas*, 238 F.3d at 1214, where we noted that the government need not tack an "entry" charge onto every "found in" charge. As a result, in the absence of contrary evidence we refused to overturn a conviction on the basis that the government had failed to prove a "found in" crime beyond a reasonable doubt. *Id.*

A contrary rule would be unworkable, even absurd, as this very case demonstrates. In Castellanos's view, the government must attempt to determine the route that Castellanos took, must then locate and disclose all sensors that might have detected him, and must bring in evidence that no government agent, who might have been somewhere in the area of that route, saw him and kept him under surveillance. It is possible that some or all of those detection and restraint actions occurred here, but that possibility is so speculative and unsubstantial as to be an eidolon. Castellanos was required to submit or point to some evidence that something of the kind had happened before the government could be required to come forward with evidence on those issues. Absent that,

---

1. We do not here decide whether and when, upon a proper showing, the government might have to rebut a claim that a person other than the capturing agent was observing him, but did not tell the agent about that.

there was no lack of evidence that he was found in the country.

In fine, on this record the government met its burden and the evidence was sufficient to support Castellanos's conviction.

### B. *Issues Related to Official Observation*

■ Castellanos slightly shifts his focus when he claims that the district court did not permit him to put in evidence of detection and observation by others. We do not read the record quite the way he does. As we see it, all the district court precluded was cross-examination of the arresting agent, Weiland, on the issue of sensor location. In that respect, the district court did not abuse its discretion. *See Bensimon,* 172 F.3d at 1128.

What was apparent was that the inquiry was beyond the scope of Weiland's testimony on direct examination and was properly precluded on both foundational and relevance grounds. Weiland testified that he had not received any information from any possible sensors, and that he had not been contacted by any other agent on that subject or on the subject of Castellanos's presence. As far as his testimony was concerned, the precise location of the sensors, if any there were at the point of entry, had no tendency to undermine his credibility, or to show bias, or the like. *See id.; United States v. Shabani,* 48 F.3d 401, 403 (9th Cir.1995); *Wood v. Alaska,* 957 F.2d 1544, 1550 (9th Cir.1992).

Nor did the district court preclude Castellanos from presenting evidence of observations by other agents. In fact, it suggested that Castellanos could "ask some other agent." It is true that, while discussing the propriety of cross-examining Weiland, the district court expressed negative views about the relevance of the knowledge, if any, of other agents. But every trial and appellate lawyer knows that views can change when placed in their proper context. What, for example, would the district court have thought, if a number of other agents had actually seen Castellanos cross the border, had observed him the whole time, and had been in the process of closing in on him when Weiland blundered onto the scene of action and captured their quarry? Well, one can speculate, but that is not our function. Nor need we decide what the law would require in that instance.

The fact is that no other evidence was placed before the district court, and once we refrain from flights of fancy, we look to what is really at issue: did the district court abuse its discretion when it precluded cross-examination of Weiland on the location of government sensors along the border? Again, the answer is no.

Relatedly, Castellanos claims that the district court erred because it did not give an instruction on his theory that he had to be free from official restraint in the sense that he must not have been under official observation the whole time. However, the district court did properly instruct on the elements of a violation of 8 U.S.C. § 1326. It was not required to give a more detailed instruction on Castellanos's official restraint theory when there was no evidence to support that theory. *See United States v. Wofford,* 122 F.3d 787, 789 (9th Cir. 1997); *United States v. Aguilar,* 883 F.2d 662, 682 (9th Cir.1989); *United States v. Jackson,* 726 F.2d 1466, 1468 (9th Cir. 1984). The district court did not err. *See Duran,* 59 F.3d at 941.

### C. *Sentencing*

■ Castellanos argues that the district court violated the strictures of *Apprendi v. New Jersey,* 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), when it sentenced him as an aggravated felon pursuant to 8 U.S.C. § 1326(b). That is not the law. *See United States v. Pacheco–Zepeda,* 234 F.3d 411, 413–14 (9th Cir.2000).

## CONCLUSION

We have previously held that a person under constant observation from the time he sets foot in this country is under official restraint and cannot be found here for purposes of 8 U.S.C. § 1326. We have also held that the burden of persuasion on the issue of lack of official restraint is upon the government when there is evidence of restraint in the record. Castellanos yeply pounces on those holdings, and asserts that when the record is devoid of specific evidence on the subject, the evidence is insufficient to convict a person beyond a reasonable doubt. We disagree. We now hold that in the absence of evidence to the contrary, the fact that a government official, with no prior knowledge of the alien's presence, comes upon the alien some time after the alien has crossed the border is sufficient to allow a jury to infer that the alien was "found in" the United States, and to deliver a verdict of guilty beyond a reasonable doubt.

AFFIRMED.