**UNITED STATES of America,**
**Plaintiff–Appellant,**

v.

**Jorge RODRIGUEZ–RODRIGUEZ,**
**Defendant–Appellee.**

**United States of America,**
**Plaintiff–Appellee,**

v.

**Jorge Rodriguez–Rodriguez,**
**Defendant–Appellant.**

Nos. 03–50146, 03–50147.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted March 30, 2004.

Filed April 20, 2004.

Lawrence E. Spong and Deborah J. Rhodes, Assistant United States Attorneys, San Diego, CA, for the plaintiff-appellant/cross-appellee.

Steven F. Hubacheck and Vincent J. Brunkow, Federal Defenders of San Diego, Inc., San Diego, CA, for the defendant-appellee/cross-appellant.

Before; HALL, TROTT, and CALLAHAN, Circuit Judges.

TROTT, Circuit Judge:

Jorge Rodriguez–Rodriguez ("Rodriguez") was convicted of one count of illegal entry under 8 U.S.C. § 1326 and sentenced to twenty-one months in custody. The United States ("government") appeals the sentencing judge's application of United States Sentencing Guideline (U.S.S.G.) § 2L1.2(b)(1)(A), arguing that Rodriguez's prior burglary constitutes a "crime of violence." Rodriguez cross-appeals, arguing that (1) the government's failure to allege voluntary entry in the indictment renders it insufficient, (2) the government used statements that were taken in violation of *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), and (3) Rodriguez was denied his rights under the Confrontation Clause when the court denied his request to cross examine a witness regarding INS recordkeeping.

We have jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742(b). We affirm Rodriguez's conviction. We vacate Rodriguez's sentence and remand to the district court for resentencing consistent with this opinion.

## BACKGROUND

On June 21, 2002, Rodriguez was apprehended by border patrol. After admitting that he was a citizen and national of Mexico illegally in the United States, he was arrested and transported to the Imperial Beach Border Patrol station. He was detained at the station, where he was fingerprinted and his photo and fingerprints were run against the INS records, which revealed that he had previously been deported.

At the station, Border Patrol Agent Overton read Rodriguez his *Miranda* rights in English and Spanish. After Rodriguez signed a *Miranda* waiver, witnessed by another agent, he responded to a number of questions. The agents noted that he had "needle tracks" on his arms, but observed that he was coherent, interactive, and normal. After he was questioned, Rodriguez underwent a routine health examination. The medical record indicates that Rodriguez was alert and oriented, but

it did go on to diagnose him with "acute heroin withdrawal." Miguel Ahuage,. the author of the report, testified that "acute" does not mean "severe," and that only patients undergoing mild or moderate withdrawal are permitted in the clinic where he works, while the more serious cases must be treated elsewhere.

Rodriguez was charged with being a previously deported alien found in the United States without the consent of the Attorney General under 8 U.S.C. § 1326.

Prior to trial, Rodriguez unsuccessfully moved to dismiss the action, claiming the indictment was insufficient because it failed to allege voluntary entry. Rodriguez also unsuccessfully moved to suppress the statements he made at the border patrol station, claiming that he could not have voluntarily waived his right to counsel under *Miranda*, because he was suffering from heroin withdrawal during the course of questioning. During the *Miranda* hearing, Rodriguez attempted to call an expert witness to testify to the implications of Rodriguez's suffering from heroin withdrawal and its effects on his ability to make a voluntary and intelligent waiver. The district court excluded the testimony as irrelevant. During trial, the government elicited testimony that INS records searches revealed no applications for Rodriguez's entry. Rodriguez sought to cross-examine the witness regarding the deficiencies of INS recordkeeping, but the trial court denied his request.

Rodriguez was convicted by a jury, and sentenced to twenty-one months custody followed by three years supervised release. The sentence imposed was based in part on a prior conviction. In 1991, Rodriguez

had pleaded guilty to one count of first degree burglary of a residence, a felony.

## DISCUSSION

### A. Failure to Allege Voluntary Entry

■ The sufficiency of an indictment is reviewed de novo. *United States v. Fleming*, 215 F.3d 930, 935 (9th Cir.2000). Rodriguez argues that the government's failure to allege voluntary entry in his indictment renders it insufficient.[1]

Rodriguez's argument is foreclosed by our holding in *United States v. Parga–Rosas*, 238 F.3d 1209 (9th Cir.2001), *cert. denied*, 534 U.S. 942, 122 S.Ct. 319, 151 L.Ed.2d 238 (2001). In that case, we held that a "found in" indictment, like that in the instant case, is sufficient to allege unlawful conduct under § 1326. *Id.* at 1211 ("[T]here is no basis for reversing Parga–Rosas's conviction on the ground that the government failed to allege or prove a voluntary entry.")

■ Rodriguez argues that *Parga–Rosas* was implicitly overruled by this Court's en banc decision in *United States v. Buckland*, 289 F.3d 558 (9th Cir.2002) (en banc). In *Buckland*, this Court held that under *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), drug type and quantity are material facts in a prosecution that must be "charged in the indictment, submitted to the jury, subject to the rules of evidence, and proved beyond a reasonable doubt." *Id.* at 568. Rodriguez argues that like drug type and quantity, voluntary entry is a material fact and must be charged in a § 1326 indictment. The *Buckland* decision directs us that the relevant inquiry in

1. The indictment reads:
   JORGE RODRIGUEZ–RODRIGUEZ, an alien, who had previously been excluded, deported and removed from the United States to Mexico, was found in the United States, without the Attorney General of the United States having expressly consented to the defendant's reapplication for admission into the United States; in violation of Title 8, United States Code, Section 1326.

determining whether a fact or element must be charged in an indictment is whether it "may increase a defendant's exposure to penalties," regardless of its label. *Id.* at 566. Here, voluntary entry and being found in the United States are two alternative unlawful acts that are chargeable under § 1326. Voluntary entry need not even be proved in most cases. *See United States v. Pina–Jaime,* 332 F.3d 609, 612 (9th Cir.2003) ("Today, we make clear that an alien does not have to enter the United States illegally to violate the 'found in' clause of 8 U.S.C. § 1326(a)(2)."). Because it is not necessary to prove or allege voluntary or unlawful entry in a "found in" conviction, and because voluntary entry makes no difference in a defendant's exposure to penalties, *Buckland* in no way overrules *Parga–Rosas.*

The district court correctly determined that *Parga–Rosas* controls this question and denied Rodriguez's motion to dismiss for insufficiency of the indictment.

### B. *Miranda* Violation

#### 1. *Denial of Rodriguez's Motion to Suppress*

■ We review de novo the district court's decision to admit or suppress statements that may have been obtained in violation of *Miranda.* *United States v. Nelson,* 137 F.3d 1094, 1110 (9th Cir.1998). Underlying factual findings, including a district court's finding that a defendant knowingly and intelligently waived his *Miranda* rights, are reviewed for clear error. *Id.; United States v. Garibay,* 143 F.3d 534, 536 (9th Cir.1998). The district court denied Rodriguez's motion to suppress statements he alleged were taken in violation of *Miranda* because "there [was] no evidence whatsoever that [Rodriguez's waiver] was other than voluntary." Rodriguez argues that he could not voluntarily and intelligently waive his rights under *Miranda* because he was going through heroin withdrawal. The facts do not support his claim.

■ The border agents read Rodriguez his *Miranda* rights in both English and Spanish. Rodriguez then signed a waiver and agreed to answer questions. Agent Overton, who read Rodriguez his rights, testified: "[Rodriguez] was coherent, sitting up facing me. He spoke and interacted. He seemed normal." Rodriguez's own witness, the physician assistant who examined him just after he spoke with the border agents, testified that his withdrawal could only have been "mild or moderate" and that the Rodriguez was "alert [and] oriented" at the time of the exam. Further, our case law supports the finding that individuals going through heroin withdrawal can voluntarily and intelligently waive their *Miranda* rights. *See, e.g., United States v. Coleman,* 208 F.3d 786, 791 (9th Cir.2000) ("Nor did Defendant's symptoms of heroin withdrawal render his statements involuntary."); *United States v. Kelley,* 953 F.2d 562, 565 (9th Cir.1992) (holding that even though defendant "began to display physical signs of withdrawal," his waiver was voluntary because he "remained coherent and responsive, was aware of what was going on, and told the . . . agents that he was able to continue with questioning").

On this record, the district court's determination that Rodriguez's waiver was voluntary is not clearly erroneous. Thus, the district court properly denied Rodriguez's motion to suppress the statements.

#### 2. *Exclusion of Rodriguez's Expert Testimony*

■ Rodriguez argues also that the trial court improperly excluded his expert witness, who would have testified that the symptoms of heroin withdrawal could have precluded his ability to voluntarily waive his rights under *Miranda.* The standard

of review for a district court's decision to preclude expert testimony is abuse of discretion. *United States v. Castaneda*, 94 F.3d 592, 595 (9th Cir.1996).

The trial court excluded Rodriguez's expert because "his testimony would be irrelevant." The border agents and the physician assistant all testified as to Rodriguez's actual behavior and responsiveness at the relevant time. Because "the expert's testimony was general and did not relate to any conduct that was observed on the date of [Rodriguez's] arrest," it was not an abuse of discretion for the judge to find that it was irrelevant and would not aid the trier of fact. *Castaneda*, 94 F.3d at 595. The trial court's decision to exclude Rodriguez's expert testimony lay squarely within its discretion and will not be disturbed on appeal.

## C. Confrontation Claims

■■■ Rodriguez argues that the district court's decision to curtail his cross-examination regarding INS recordkeeping procedures violated his confrontation rights guaranteed under the Sixth Amendment.

■■■ This circuit has analyzed the issue of whether cross-examination infringes upon a defendant's confrontation rights under both abuse of discretion and de novo standards. *United States v. Bensimon*, 172 F.3d 1121, 1128 (1999) ("This court reviews *de novo* whether the limitation on cross-examination violated [a defendant's] right of confrontation. The district court, however, has considerable discretion in restricting cross-examination, and this court will find error only when that discretion has been abused." (internal citations omitted)); *United States v. Shabani*, 48 F.3d 401, 403 (9th Cir.1995) ("We review judicial limits on cross-examination for abuse of discretion."). Both lines of cases provide that a limitation on cross-examination does not violate the Confrontation Clause unless it limits relevant testimony and prejudices the defendant. *Bensimon*, 172 F.3d at 1128; *Shabani*, 48 F.3d at 403. Here, under either standard, Rodriguez's claim fails.

Rodriguez asserts that the excluded testimony would have shown that (1) INS computers are not fully interactive with other federal agencies' computers, (2) over 2 million documents filed by immigrants have been lost or forgotten, (3) other federal agencies have the ability and authority to apply for an immigrant to come into the United States, and (4) the custodian never checked with the other federal agencies to inquire about documents relating to Rodriguez. None of that information is relevant on the facts of this case, because it is uncontested that Rodriguez never made any application to the INS or any other federal agency.

Because Rodriguez's line of inquiry was not relevant to the facts of his case, the district court's restricting cross-examination did not violate the Confrontation Clause.

## D. Sentencing

■■■ The sentencing judge's application of the Sentencing Guidelines, including whether a prior conviction is a "crime of violence" or an "aggravated felony" for the purposes of U.S.S.G. § 2L1.2, is reviewed de novo. *United States v. Bonilla–Montenegro*, 331 F.3d 1047, 1049 (9th Cir. 2003).

The Guidelines provide that a sentence is enhanced by sixteen levels if an alien "previously was deported, or unlawfully remained in the United States, after . . . a conviction for a felony that is . . . a crime of violence." U.S.S.G. § 2L1.2(b)(1)(A). For an aggravated felony, the enhancement is only eight levels. U.S.S.G. § 2L1.2(b)(1)(C). The application notes specifically provide that "crime of violence"

includes "burglary of a dwelling." U.S.S.G. § 2L1.2(b)(1)(A)(ii).

The sentencing judge enhanced Rodriguez's sentence by eight levels, characterizing his prior burglary conviction as an "aggravated felony," rather than a "crime of violence." At the sentencing hearing, the defense argued that under *Taylor v. United States*, California's generic burglary definition was too broad to apply the "crime of violence" guideline, and that Rodriguez's role as a lookout warranted application of the lesser "aggravated felony" enhancement. *See* 495 U.S. 575, 110 S.Ct. 2143, 109 L.Ed.2d 607 (1990). The government countered that the application note specifically includes "burglary of a dwelling" in the definition of "crime of violence." *See* U.S.S.G. § 2L1.2, cmt. n. 1(B)(iii).

In *Taylor*, the Supreme Court held that in order for a prior burglary conviction to qualify as a crime of violence, it must meet "the generic, contemporary meaning of burglary[, which] contains at least the following elements: an unlawful or unprivileged entry into, or remaining in, a building or other structure, with intent to commit a crime." 495 U.S. at 598, 110 S.Ct. 2143. In its review of various states' burglary definitions, the Supreme Court noted that California Penal Code § 459 "defines 'burglary' so broadly as to include shoplifting and theft of goods from a 'locked' but unoccupied automobile," behavior that would be outside the scope of the generic burglary definition. *Id.* at 591, 110 S.Ct. 2143. Rodriguez, however, specifically pleaded guilty to burglary of "an inhabited dwelling area within the meaning of [California] penal code section 460," so his prior conviction fits squarely within the definition of "burglary of a dwelling," and the sixteen-level enhancement should apply. *See United States v. Becker*, 919 F.2d 568, 573 (9th Cir.1990) (considering *Taylor* and holding that

"first-degree burglary under California law is a 'crime of violence' for purposes of sentence enhancement").

Rodriguez's alternate argument, that his limited role as a lookout warrants application of the lesser enhancement is also unavailing. The application notes specifically include convictions for aiding and abetting, conspiring, and attempting to commit the listed offenses in U.S.S.G. § 2L1.2(b)(1). U.S.S.G. § 2L1.2, cmt. n. 5. Because the sentencing judge misapplied U.S.S.G. § 2L1.2(b)(1) in determining that Rodriguez's sentence should only be enhanced eight levels for an aggravated felony instead of sixteen levels for a crime of violence, we vacate Rodriguez's sentence and remand to the district court for resentencing in accordance with this opinion.

**AFFIRMED in part, VACATED and REMANDED in part.**