**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
                *Plaintiff-Appellee,*

v.

JUAN ANTONIO VELA-ROBLES, aka
Antonio Juan Vela, Sr.,
                *Defendant-Appellant.*

No. 03-10691

D.C. No.
CR-03-00177-CKJ

OPINION

Appeal from the United States District Court
for the District of Arizona
Cindy K. Jorgenson, District Judge, Presiding

Submitted December 7, 2004*
San Francisco, California

Filed February 7, 2005

Before: Dorothy W. Nelson, Andrew J. Kleinfeld, and
Ronald M. Gould, Circuit Judges.

Opinion by Judge Gould

---

*This panel unanimously finds this case suitable for decision without
oral argument. *See* Fed. R. App. P. 34(a)(2).

1577

## COUNSEL

Peter A. Matiatos, Tucson, Arizona, for the appellant.

Paul K. Charlton, United States Attorney, District of Arizona, Christina M. Cabanillas, Deputy Appellate Chief, and Nathan D. Leonardo, Assistant United States Attorney, Tucson, Arizona, for the appellee.

## OPINION

GOULD, Circuit Judge:

Juan Antonio Vela-Robles appeals his conviction for illegal reentry after deportation, in violation of 8 U.S.C. § 1326. Vela-Robles contends that the district court erred in denying, for lack of a factual basis, his requested jury instruction on the need for freedom from official restraint to support a finding

of illegal reentry. We have jurisdiction under 28 U.S.C. § 1291, and we affirm.

# I

On December 30, 2002, United States Border Patrol Agent Chris Ofeciar received a message from a seismic sensor located within Jackson Canyon, Arizona (about ten to fifteen feet north of the Mexican border) that the sensor had been activated. Ofeciar was not sure what had triggered the sensor because seismic sensors respond to the movement of animals, people, or vehicles, or even may be set off by the weather.

Agents Ofeciar and Rene Ortiz responded to the sensor, arriving in the Jackson Canyon area an estimated ten minutes after being notified. Shortly thereafter, Ofeciar and Ortiz encountered Vela-Robles about three-quarters to one mile north of the border.

Vela-Robles admitted that he was born in Mexico, that he was not legally within the United States, and that he had been deported in 1999, but had crossed back into the United States through a hole in the international boundary fence. Vela-Robles was later indicted on one count of illegal reentry after deportation, in violation of 8 U.S.C. § 1326.

During trial, Vela-Robles requested a jury instruction regarding "official restraint," to support a theory of the case that he had not "entered" the United States.[1] The government

---

[1] Vela-Robles contended at trial that he was not guilty of illegal reentry, but rather that he was guilty of attempted illegal reentry because he was under constant governmental observation. He requested the following jury instruction:

> Physical presence on United States soil is not enough to prove that an alien entered or was found in the United States. Enter or found in means more than the mere act of crossing the border line. Before an alien can be said to have entered or be found in

objected to the instruction on grounds that it was unsupported by the evidence and that it would unnecessarily confuse the jury. The district court denied the requested instruction, observing that there was no case law holding that sensor activation constituted observation, and that the instruction was not supported by the facts. The jury gave its verdict finding Vela-Robles guilty of one count of illegal reentry and the district court sentenced him to forty-six months in prison. This appeal followed, challenging the district court's refusal to give the requested jury instruction on "official restraint."

## II

Vela-Robles contends that the district court abused its discretion when it refused to give his proffered jury instruction because, he argues, there was evidence that he was under official restraint from the moment he triggered the seismic sensor at the entrance of Jackson Canyon until his apprehension by Agents Ofeciar and Ortiz.[2]

[1] Our circuit law establishes the rule that a person does not commit an unlawful entry into the United States if he or she was "under constant observation by governmental authorities" from the time of physical entry until the time of arrest. *United States v. Castellanos-Garcia*, 270 F.3d 773, 775 (9th Cir. 2001); *see also United States v. Oscar*, 496 F.2d 492, 493-94 (9th Cir. 1974) (holding that an entry has not been accomplished until physical presence is accompanied by free-

---

the United States, he or she must be free from official restraint. The restraint may take the form of surveillance, unbeknownst to the alien. In order to enter or be found in the United States the alien must achieve the freedom to go at large and mix with the population.

[2]We review for an abuse of discretion the district court's finding that there is an insufficient factual foundation to support a proffered jury instruction. *United States v. Castellanos-Garcia*, 270 F.3d 773, 775 (9th Cir. 2001).

dom from official restraint). The rule reflects the policy of the law criminalizing illegal entry: The law seeks to prevent from entering those who "come to stay permanently, or for a period of time, or to go at large and at will within the United States." *United States v. Pacheco-Medina*, 212 F.3d 1162, 1164 (9th Cir. 2000) (quoting *Ex parte Chow Chok*, 161 F. 627, 630 (C.C.N.D.N.Y. 1908), *aff'd*, 163 F. 1021 (2d Cir. 1908)). Yet those who are under constant governmental observation or surveillance are "in the government's constructive custody" for the entire time they are present, and this "official restraint" precludes a finding of entry. *United States v. Aguilar*, 883 F.2d 662, 683 (9th Cir. 1989), *superseded by* 8 U.S.C. § 1324 (2000 & Supp. I 2004) ("The [official restraint] doctrine is premised on the theory that the alien is in the government's constructive custody at the time of physical entry. By contrast, when an alien is able to exercise his free will subsequent to physical entry, he is not under official restraint."); *see also Castellanos-Garcia*, 270 F.3d at 775 (holding that if a person is "under constant observation or surveillance from the moment of his entry to the time of his capture, he is not free from official restraint"); *Pacheco-Medina*, 212 F.3d at 1163-64 (holding that "physical presence is not enough" to constitute an entry; the person must at some time while present also be free from official restraint).[3]

Vela-Robles argues that he was under constant surveillance because Jackson Canyon is a natural gorge and there are only two practical ways out: the entrance at the U.S.-Mexican border where Vela-Robles crossed over, and the exit about one mile north of the border. Vela-Robles suggests that once he

---

[3]Other circuits have established a similar doctrine. *See, e.g.*, *Nyirenda v. INS*, 279 F.3d 620, 623-25 (8th Cir. 2002); *Farquharson v. U.S. Attorney General*, 246 F.3d 1317, 1321-22 (11th Cir. 2001); *Correa v. Thornburgh*, 901 F.2d 1166, 1171-72 (2d Cir. 1990) (" 'Freedom from official restraint' means that the alien who is attempting entry is no longer under constraint emanating from the government that would otherwise prevent her from physically passing on."). None of the federal circuits have adopted a contrary rule.

triggered the seismic sensor, he was under constant observation or surveillance because Border Patrol agents knew he was in the canyon. The issue that we must decide is whether Vela-Robles was under official restraint within the meaning of our case law, so as to prohibit a conclusion that he had unlawfully entered the United States. This turns on whether a person who triggers a seismic sensor, at least in the circumstances presented, may be considered by law to be under constant observation or surveillance.

[2] We see little in reason or analysis that could support the argument urged by Vela-Robles. Detection by a seismic sensor does not amount to observation or surveillance for the purpose of showing official restraint; in light of the rule's purpose, an alien must be "in the visual or physical grasp of the authorities at all times" to show that he or she is under official restraint. *See Pacheco-Medina*, 212 F.3d at 1165. It would not be appropriate to extend the doctrine to encompass a case such as this, involving the mere triggering of seismic sensors, absent constant visual observation. Vela-Robles was not subject to official restraint before his arrest because he was not in the constant visual or physical grasp of governmental authorities after he crossed the border. Vela-Robles undisputedly traveled at least a half of a mile north of the border before Agents Ofeciar and Ortiz detected his presence. *See Castellanos-Garcia*, 270 F.3d at 774-76 (holding that the evidence did not support an "official restraint" theory where no agent saw the defendant cross the border, and the defendant was found 100 yards north of the U.S.-Mexican border). Because the reasons for the rule that official restraint precludes a conclusion of illegal entry, despite physical presence, are not applicable, we decline to extend the scope of the rule to cover a person who has merely tripped a seismic sensor and who may have difficulty escaping.

## III

[3] A district court is not required to give an instruction on a defendant's official restraint theory when there is no evi-

dence to support the theory. *Id.* at 777. We hold that the district court did not abuse its discretion in determining that there was an insufficient factual basis for Vela-Robles's requested instruction because Vela-Robles presented no evidence showing that he was under constant observation or surveillance by government officials from the moment he crossed the border until he was apprehended.

**AFFIRMED.**