**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
  *Plaintiff-Appellee,*

  v.

CARMELO BELLO-BAHENA,
  *Defendant-Appellant.*

No. 04-50013

D.C. No.
CR-03-01462-DMS

UNITED STATES OF AMERICA,
  *Plaintiff-Appellee,*

  v.

CARMELO BELLO-BAHENA,
  *Defendant-Appellant.*

No. 04-50155

D.C. No.
CR-02-03377-GT

OPINION

Appeals from the United States District Court
for the Southern District of California
Dana M. Sabraw and Gordon Thompson, District Judges,
Presiding

Argued and Submitted
October 6, 2004—Pasadena, California

Filed June 15, 2005

Before: Harry Pregerson, A. Wallace Tashima, and
Richard A. Paez, Circuit Judges.

Opinion by Judge Paez

7153

**COUNSEL**

Ramzi G. Nasser, Federal Defenders of San Diego, Inc., San Diego, California, for the defenant-appellant.

Carol C. Lam, United States Attorney, San Diego, California; Roger W. Haines, Jr., Assistant U.S. Attorney, Chief, Appellate Section, Criminal Division, San Diego, California; Randy K. Jones, Assistant U.S. Attorney, San Diego, California; Mark R. Rehe, Assistant U.S. Attorney, San Diego, California, for the plaintiff-appellee.

---

**OPINION**

PAEZ, Circuit Judge:

Carmelo Bello-Bahena ("Bello-Bahena") appeals his conviction and sentence for being a deported alien found in the United States in violation of 8 U.S.C. § 1326(a).[1] Bello-Bahena argues that 1) the district court erroneously denied his motion for judgment of acquittal because there was insufficient evidence to conclude that he was free from official restraint, 2) the district court erred in rejecting Bello-Bahena's proposed jury instruction regarding official restraint, and 3) the district court erred in refusing to dismiss the indictment for failure to allege certain elements of the offense. We have jurisdiction pursuant to 28 U.S.C. § 1291, and we reverse and remand for a new trial.[2]

I.

On March 6, 2003, United States Border Patrol Agent Este-

---

[1]In addition, in appeal No. 04-50155, Bello-Bahena appeals his sentence for violation of supervised release for a prior conviction under § 1326. The district court found him in violation of supervised release on the sole basis of his conviction at issue in appeal No. 04-50013. We consolidated Bello-Bahena's appeal of the judgment of conviction with his appeal of the sentence for violation of supervised release.

[2]Because the sole basis for the judgment finding Bello-Bahena in violation of supervised release was his § 1326 conviction, we also vacate that judgment and remand for further proceedings.

ban Rodriguez was performing line watch duties in Hagen's Pond, a desolate area near the United States/Mexico border. At about 3:00 a.m., Agent Rodriguez received a radio alert from Agent Bruce Drake, who was operating a "night scope."[3] Drake told Rodriguez that he had observed a group of people heading north in the area. Drake then guided Rodriguez and two other agents to a location approximately one mile north of the border, where Bello-Bahena was hiding in some brush. In response to questioning by Agent Rodriguez, Bello-Bahena stated that he was a Mexican citizen and did not have documents to be in the United States. Bello-Bahena was arrested and transported to the Campo Border Patrol Station for processing.

The government filed an indictment charging Bello-Bahena with being a deported alien "found in" the United States in violation of 8 U.S.C. § 1326(a). Bello-Bahena entered a not guilty plea. Prior to trial, Bello-Bahena moved to dismiss the indictment for failure to allege that he 1) voluntarily entered the United States, 2) was inspected and admitted by an immigration officer or actually and intentionally evaded inspection at the nearest inspection point, and 3) knew that he was in the United States. The district court denied the motion.

At trial, Agent Rodriguez testified that Agent Drake had detected Bello-Bahena with his scope and that Drake guided Rodriguez to Bello-Bahena's location. Agent Rodriguez stated that Bello-Bahena was under constant surveillance by Agent Drake from the time Drake notified Rodriguez of Bello-Bahena's presence until his apprehension, but Rodriguez testified that he had "no idea" when Drake first saw Bello-Bahena.

At the close of the government's evidence, Bello-Bahena

---

[3]According to Agent Rodriguez, a night scope is "a telescope that's mounted on the back of a pickup and it picks up body heat which is connected to a television monitor and it brings out an image of an individual."

moved for a judgment of acquittal pursuant to Federal Rule of Criminal Procedure 29. The district court denied the motion.

Bello-Bahena requested a jury instruction explaining that a defendant may not be convicted of being found in the United States in violation of 8 U.S.C. § 1326 if he was under "official restraint" from the moment he crossed the border, and explaining that official restraint includes constant surveillance by border agents. In support of the proposed instruction, defense counsel pointed to Agent Rodriguez's testimony that Bello-Bahena was under constant surveillance up to the time of his arrest. The prosecution objected to the instruction on the ground that no evidence showed that Bello-Bahena was observed as he crossed the border. The district court denied Bello-Bahena's proposed instruction on the basis of its conclusion that constant surveillance does not amount to official restraint. The court then gave an instruction stating that the government had to prove three elements: "First, the defendant is an alien; second, the defendant was deported from the United States; and third, the defendant voluntarily reentered the United States without the consent of the Attorney General of the United States or his designated successor or the Department of Homeland Security."

The jury returned a guilty verdict. Following entry of the judgment of conviction, Bello-Bahena timely appealed.

## II.

Bello-Bahena first argues that the district court erred in denying his motion for judgment of acquittal. We review *de novo* a district court's denial of a motion for judgment of acquittal. *United States v. McNeil*, 320 F.3d 1034, 1035 (9th Cir. 2003). We must view the evidence in the light most favorable to the government and determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *United States v. Gonzalez-Torres*, 309 F.3d 594, 598 (9th Cir. 2002).

**[1]** 8 U.S.C. § 1326 makes it a crime for a person who previously has been deported to enter, attempt to enter, or at any time be found in the United States.[4] Physical presence in the country is insufficient to convict a defendant for being "found in" the United States. The government also must prove that the individual "entered the United States free from official restraint at the time officials discovered or apprehended him." *United States v. Ruiz-Lopez*, 234 F.3d 445, 448 (9th Cir. 2000), *as amended* (2001); *see also United States v. Parga-Rosas*, 238 F.3d 1209, 1213 (9th Cir. 2001) (explaining that an alien who is physically present in the United States is not deemed to have entered "if he is still under official restraint at the time he is found"). The burden is on the government to establish lack of official restraint. *United States v. Castellanos-Garcia*, 270 F.3d 773, 775 (9th Cir. 2001).

**[2]** It is well established in this circuit that official restraint includes constant governmental observation or surveillance from the moment of entry, and that those who are under such surveillance for the entire time they are present cannot be found to have entered the United States for purposes of § 1326. *United States v. Vela-Robles*, 397 F.3d 786, 788 (9th Cir. 2005). Constant surveillance will bar conviction even if the alien is unaware that he is being observed and even if he is arrested at a point "well past the point of entry." *Ruiz-Lopez*, 234 F.3d at 448 (citing *Matter of Pierce*, 141 I. & N. Dec. 467 (BIA 1973)). Thus, we have reversed a "found in" conviction where the alien was under continuous observation, except for a number of seconds, by one of two agents from the time he crossed the border until his apprehension. *Gonzalez-Torres*, 309 F.3d at 599; *see also United States v.*

---

[4]Section 1326(a) provides in pertinent part that "any alien who— (1) has been denied admission, excluded, deported, or removed or has departed the United States while an order of exclusion, deportation, or removal is outstanding, and thereafter (2) enters, attempts to enter, or is at any time found in, the United States, . . . shall be fined under Title 18, or imprisoned not more than 2 years, or both."

*Pacheco-Medina*, 212 F.3d 1162, 1163 (9th Cir. 2000) (reversing a "found in" conviction of an alien who was detected on a surveillance video camera as he crossed the border and except for a split second never left the agent's sight before his arrest).

**[3]** On the other hand, where an individual evades the government's detection, even for a brief time, we have held that he has legally entered the country free of official restraint and may be convicted of a "found in" offense. *See United States v. Ramos-Godinez*, 273 F.3d 820, 824-25 (9th Cir. 2001) (affirming a "found in" conviction where law enforcement observed the defendant cross the border but lost sight of him for two significant periods of time before his apprehension); *United States v. Hernandez-Herrera*, 273 F.3d 1213, 1219 (9th Cir. 2001) (holding that an alien who was being pursued by law enforcement and escaped into thick brush out of sight of law enforcement for a period before his arrest was free from official restraint).

Bello-Bahena asserts that a rational jury could not have found beyond a reasonable doubt that he was free from official restraint in the form of constant governmental observation. He notes that it is undisputed that he was under continuous surveillance from the time Agent Drake contacted Agent Rodriguez until his arrest. Further, no evidence showed a lack of surveillance from the time Bello-Bahena crossed the border. Rodriguez testified that he had "no idea" when Drake first detected Bello-Bahena, and Drake himself did not testify. Bello-Bahena suggests that the most reasonable inference is that Drake's scope was pointed at the border, and that Drake alerted Rodriguez when the group was near Rodriguez, not when Drake first saw them. Without hearing testimony regarding whether Drake observed Bello-Bahena from the moment he crossed the border, Bello-Bahena argues, the jury had no basis from which to conclude that Bello-Bahena was *not* under constant surveillance the entire time he was in the country.

Relying on our decision in *Castellanos-Garcia*, the government argues that the evidence supports an inference that Bello-Bahena was free from official restraint up until the point when Drake notified Rodriguez of Bello-Bahena's presence. In *Castellanos-Garcia*, we rejected a defendant's claim that the government failed to prove that he was free from official restraint. 270 F.3d at 776. There, the arresting agent testified that he simply came upon the defendant at some point after he crossed the border, without relying on a sensor device or another agent to locate him. *Id.* at 778. We held that in the absence of contrary evidence, such testimony sufficed to allow a rational jury to conclude that the defendant was free from official restraint prior to his arrest. *Id.*

**[4]** Viewing the evidence in the light most favorable to the government, we conclude that here, as in *Castellanos-Garcia*, a rational jury could have found beyond a reasonable doubt that Bello-Bahena was free from official restraint for at least some time before his apprehension. Agent Rodriguez testified that around 3:00 a.m., Agent Drake alerted him that "he had a group of seven individuals trekking north right around the Ponds area." According to Rodriguez, Hagen's Pond was about one mile north of the border. At the time Rodriguez received the call from Drake, Rodriguez was assigned to "line watch duties," less than a quarter mile north of the border. Rodriguez testified that he drove to Bello-Bahena's location, guided by Drake, who kept Bello-Bahena under continuous observation until his arrest. A reasonable jury could conclude on the basis of this testimony that Drake first detected Bello-Bahena at some point after he crossed the border. Thus, the district court did not err in denying Bello-Bahena's motion for judgment of acquittal.

III.

**[5]** Bello-Bahena next argues that the district court should have given his proposed jury instruction regarding his theory that he was under official restraint from the moment he

crossed the border. "A defendant is entitled to have the judge instruct the jury on his theory of defense, provided that it is supported by law and has some foundation in the evidence." *United States v. Fejes*, 232 F.3d 696, 702 (9th Cir. 2000). Where the parties dispute whether the evidence supports a proposed instruction, we review a district court's rejection of the instruction for an abuse of discretion. *Id.* "If the defendant's theory of defense is supported by the evidence, we review de novo whether the district court's instructions adequately cover it." *Id.*

Here, Bello-Bahena requested an instruction explaining that the government had to prove that he was free from official restraint and defining official restraint to include constant surveillance. The proposed jury instruction read as follows:

> An alien who is under official restraint, although physically present on United States soil, has not entered the United States in the legal sense. Thus, if Mr. Bello-Bahena was continuously under "official restraint" from the time that he crossed the border until he was apprehended, he has not entered the United States within the meaning of the statute under which he is charged in the indictment.

> "Official restraint" means that Mr. Bello-Bahena was effectively deprived of his liberty and prevented from going at large within the United States.

> In order for an alien to be deemed not to have yet entered the United States under this rule of law, the alien must be under the official restraint at all times during and subsequent to his physical entry onto United States soil. Constant observation and surveillance of the alien by one or more agents who is or are reasonably able to apprehend him after he has crossed the border constitutes official restraint. The constant surveillance must be of such a degree that

it would prevent the alien from escaping into the general population of the United States.

It is for you as the finders of fact to determine whether the Government has proved beyond a reasonable doubt that Mr. Bello-Bahena was not continuously under "official restraint" from the time that he crossed the international border until his apprehension. In making this determination, you should consider whether Mr. Bello-Bahena was under constant surveillance by authorities and whether that surveillance was continuous. An alien need not know he is under surveillance to be under official restraint or have intended to evade inspection.

If Mr. Bello-Bahena was not under constant surveillance, in determining whether he was under "official restraint," other factors you should consider include the distance the authorities were from Mr. Bello-Bahena, the amount of time he may have been physically present within the United States prior to apprehension, the distance he may have traveled into the United States, and the characteristics of the area in which he may have crossed the border.

Bello-Bahena and the government disputed whether the evidence supported the proffered instruction. Bello-Bahena argued that the instruction was warranted because Rodriguez testified that the defendant was under constant surveillance from the time Drake called Rodriguez. The government objected that "there was no testimony that anyone saw him enter into the United States." After hearing the parties' arguments, the district court rejected the instruction on the basis of an erroneous legal conclusion. The district court asked, "[Is it] the Government's position that surveillance is not tantamount to deprivation of liberty?" The government replied that it was, and the court agreed and rejected the proposed instruction.

The district court's conclusion "that surveillance is not tantamount to deprivation of liberty" is contrary to the well established rule in our circuit "that a person does not commit an unlawful entry into the United States if he or she was 'under constant observation by governmental authorities' from the time of physical entry until the time of arrest." *Vela-Robles*, 397 F.3d at 788 (quoting *Castellanos-Garcia*, 270 F.3d at 775). Nonetheless, regardless of the district court's misunderstanding of the law, whether Bello-Bahena was entitled to have the judge instruct the jury on his theory of defense depends on whether that theory had "some foundation in the evidence," a factual issue that is reviewed for an abuse of discretion. *See Fejes*, 232 F.3d at 702.

Bello-Bahena argues that his proffered instruction is supported by Agent Rodriguez's testimony that Bello-Bahena was under constant surveillance preceding his arrest. At trial, the prosecutor asked Rodriguez, "To your knowledge, was the Defendant under constant surveillance by the other agent [Drake] on March 6, 2003?" Rodriguez responded, "Yes. I believe so." On cross-examination, defense counsel asked Rodriguez, "You testified that the scope operator I believe indicated to you that he kept him under constant surveillance until you arrived at the location?" Rodriguez responded, "Yes, m'am." Rodriguez clarified that Drake did not tell Rodriguez whether he had observed Bello-Bahena cross the border, and that Rodriguez had "no idea" when Drake first detected Bello-Bahena.

The government contends that this evidence did not suffice to warrant Bello-Bahena's proposed instruction because no evidence showed that the observation was continuous from the time of entry. It argues that the circumstances here are analogous to those in *Castellanos-Garcia*, where we affirmed the denial of the defendant's proposed jury instruction regarding official restraint. *Castellanos-Garcia* is far different from this case, however. In *Castellanos-Garcia*, we emphasized that "there was not a scintilla of evidence" to support the

defendant's theory that he was under constant surveillance. 270 F.3d at 776. Rather, the evidence suggested that the defendant was *not* under any form of surveillance prior to his apprehension: the arresting agent testified that he merely came upon the defendant without the aid of a sensor device or other agent. *Id.* In such circumstances, we held that the defendant was not entitled to an official restraint instruction because "there was no evidence to support that theory." *Id.* at 777.

**[6]** Here, in contrast, Bello-Bahena's claim of constant surveillance has a basis in the evidence, consisting of the arresting agent's testimony that another agent was continuously monitoring Bello-Bahena, and that Rodriguez relied on that surveillance to find Bello-Bahena. Although there was an absence of evidence regarding whether the surveillance began when Bello-Bahena crossed the border, the evidence permits such a rational inference to be drawn. Thus, Rodriguez's testimony provides a sufficient basis to warrant an official restraint instruction.

Our recent decision in *Vela-Robles* does not aid the government's position. In that case, we reaffirmed the principle set forth in *Castellanos-Garcia* that where a defendant presents no evidence that he was under constant governmental observation, a district court is not required to give an instruction on the defendant's official restraint theory. *Vela-Robles*, 397 F.3d at 789. The defendant in *Vela-Robles* argued that he was under constant surveillance because he triggered a seismic sensor as he crossed the border. We rejected that argument, holding that "[d]etection by a seismic sensor does not amount to observation or surveillance for the purpose of showing official restraint," but rather "an alien must be 'in the visual or physical grasp of the authorities at all times' to show that he or she is under official restraint." *Id.* (quoting *Pacheco-Medina*, 212 F.3d at 1165). Because Vela-Robles presented no evidence that he was under constant observation, we held

that Vela-Robles was not entitled to an official restraint instruction. *Id.*

Unlike the defendants in *Vela-Robles* and *Castellanos-Garcia*, Bello-Bahena has pointed to affirmative evidence that he was under continuous visual observation by a border agent for a period of time before his arrest. Where, as here, there is at least "some foundation in the evidence" to support a defendant's theory of defense, a district court is required to give an instruction on that theory. *See Fejes*, 232 F.3d at 702; *see also United States v. Washington*, 819 F.2d 221, 225 (9th Cir. 1987) ("[A] defendant is entitled to an instruction concerning his theory of the case if the theory is legally sound and evidence in the case makes it applicable, even if that evidence is weak, insufficient, inconsistent, or of doubtful credibility."). Because, bearing in mind that the burden of proof was on the government, Agent Rodriguez's testimony supports Bello-Bahena's defense theory, the district court abused its discretion in failing to give an official restraint instruction.[5]

Moreover, the instruction actually given to the jury did not adequately cover Bello-Bahena's defense theory. The court instructed the jury that there were three elements to the crime of being a deported alien found in the United States: "First, the defendant is an alien; second, the defendant was deported from the United States; and third, the defendant voluntarily reentered the United States without the consent of the Attorney General of the United States or his designated successor or the Department of Homeland Security." The instruction made no mention of official restraint or constant surveillance or of the burden of proof on that issue. Because the evidence warranted an instruction regarding official restraint, and because the instruction given wholly failed to cover this the-

---

[5]Because we find that Agent Rodriguez's testimony supported an official restraint instruction, we need not address Bello-Bahena's additional argument that evidence of the circumstances surrounding his arrest, apart from constant surveillance, warranted his proposed instruction.

ory, we reverse the judgment of the district court and remand for a new trial.[6]

## IV.

Finally, Bello-Bahena argues that the district court erred by denying his motion to dismiss the indictment for failure to allege certain elements of the crime.[7] We review the sufficiency of an indictment *de novo*. *United States v. Rodriguez-Rodriguez*, 364 F.3d 1142, 1145 (9th Cir. 2004).

---

[6]The government acknowledges that the denial of an instruction regarding a defendant's theory of defense warrants per se reversal; however, it asserts that here, any error should be reviewed for harmlessness because Bello-Bahena did not explicitly state that official restraint was his "theory of defense," and his proposed instruction is more appropriately characterized as a "gloss on the element" of entry. Under harmless error review, the government argues, reversal is not warranted because it is clear beyond a reasonable doubt that a rational jury would have found Bello-Bahena guilty even with the proffered instruction.

The government points to no authority for its position that this court's application of harmless error review turns on whether a defendant used the words "theory of defense" in labeling its proffered instruction. Regardless of whether official restraint is characterized as a theory of defense or a gloss on the element of entry, it is undisputed that if the government fails to prove freedom from official restraint, Bello-Bahena cannot be found guilty of the crime charged. *See Vela-Robles*, 397 F.3d at 788. Thus, Bello-Bahena is entitled to an instruction addressing official restraint as long as it has some foundation in the evidence. *See Fejes*, 232 F.3d at 702.

[7]The indictment states:

On or about March 3, 2003, within the Southern District of California, defendant CARMELO BELLO-BAHENA, aka Francisco Hernandez-Catalan, an alien, who previously had been excluded, deported and removed from the United States to Mexico, was found in the United States, without the Attorney General of the United States or his designated successor, the Secretary of the Department of Homeland Security (Title 6, United States Code, Sections 202(3) and (4), and 557), having expressly consented to the defendant's reapplication for admission into the United States; in violation of Title 8, United States Code, Section 1326.

**[7]** Bello-Bahena asserts that the district court should have dismissed the indictment because it failed to allege (1) voluntary entry, (2) inspection and admission by an immigration officer or actual and intentional evasion of inspection, and (3) knowledge of presence in the United States. However, each of these claims is foreclosed by our decision in *United States v. Rivera-Sillas*, 376 F.3d 887, 890 (9th Cir. 2004) ("That clause [§ 1326] does not require the indictment to specifically state that the defendant alien voluntarily entered the United States."); *id.* at 892 (holding that a "found in" indictment need not allege all of the elements of entry); *id.* at 893 (holding that an indictment under § 1326 need not allege knowledge because the "general intent of the defendant to reenter the United States may be inferred from the fact that the defendant was previously deported and subsequently found in the United States."). Thus, we conclude that the district court did not err in denying Bello-Bahena's motion to dismiss the indictment.

## V.

The district court did not err in denying Bello-Bahena's motion for acquittal and his motion to dismiss the indictment. Given the state of the evidence, however, it should have given an instruction on official restraint. In appeal No. 04-50013, the judgment of conviction is, therefore, REVERSED and the case is REMANDED for a new trial.[8]

---

[8]Having reversed the conviction, in appeal No. 04-50155, we VACATE the sentence imposed for violation of supervised release and REMAND for further proceedings consistent with this opinion.