**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 10-50520 |
| Plaintiff - Appellee, | D.C. No. 3:10-cr-02023-JLS-1 |
| v. | |
| JUAN MARTIN GALVEZ-GUERRERO, | MEMORANDUM[*] |
| Defendant - Appellant. | |

Appeal from the United States District Court
for the Southern District of California
Janis L. Sammartino, District Judge, Presiding

Argued and Submitted August 5, 2011
Pasadena, California

Before: WARDLAW and BERZON, Circuit Judges, and WHYTE, Senior District
Judge.[**]

Juan Galvez-Guerrero ("Galvez"), who was born in Mexico, appeals his

conviction for being a previously-deported alien found in the United States without

authorization, in violation of 8 U.S.C. § 1326(a). Galvez maintained during his

---

[*] This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36-3.

[**] The Honorable Ronald M. Whyte, Senior District Judge for the U.S. District Court for Northern California, San Jose, sitting by designation.

trial that the Government could not prove the element of alienage because he had, in fact, derived citizenship from his mother (Rosario), who had, in turn, derived citizenship from her father (Melchor), who unquestionably was a native-born U.S. citizen. Galvez argues that the district court erred in refusing two requested jury instructions: the first defined "residency" and was relevant to Galvez's contention that Rosario derived citizenship from Melchor; and the other concerned the requirements of a legal marriage in Mexico and was relevant to whether Galvez derived citizenship from Rosario. Galvez also challenges the district court's denial of his Rule 29 motion for a judgment of acquittal, asserting that no rational jury could find sufficient evidence of alienage. We reject Galvez's second contention, but reverse and remand for a new trial on the first.

1. "A criminal defendant has a constitutional right to have the jury instructed according to his theory of the case," *United States v. Johnson*, 459 F.3d 990, 993 (9th Cir. 2006), provided that the requested instruction "is supported by law and has some foundation in the evidence." *United States v. Bello-Bahena*, 411 F.3d 1083, 1088–89 (9th Cir. 2005) (citation omitted). Whether an instruction "is supported by law" is reviewed de novo. *See United States v. Castagana*, 604 F.3d 1160, 1163 n.2 (9th Cir. 2010). Whether it "has some foundation in the evidence" is reviewed for an abuse of discretion. *See United States v. Daane*, 475 F.3d 1114,

1119 (9th Cir. 2007); *Bello-Bahena*, 411 F.3d at 1089. The district court's failure to give a defendant's requested instruction that is supported by law and has some foundation in the evidence "warrants per se reversal," *Bello-Bahena*, 411 F.3d at 1091 n.6, unless "other instructions, in their entirety, adequately cover that defense theory." *United States v. Thomas*, 612 F.3d 1107, 1120 (9th Cir. 2010) (citation and quotation marks omitted).

The Government does not argue that the requested jury instructions were inaccurate statements of the law or were unsupported by the evidence. Nor could it, as both requirements were clearly met. Instead, the Government maintains that "other instructions, in their entirety, adequately cover that defense theory." *Id.* We disagree.

While the district court gave *an* instruction on Galvez's theory of the defense, there is no way to read the jury instructions, separately or in combination, as giving meaning to the legal concepts of "residence," "out of wedlock," or "marriage." These concepts, however, were critical to the jury's application of the relevant law to Galvez's argument that he may have derived citizenship from his mother.

We also disagree with the Government's contention that the district court was not required to define "marriage" or "residency" because the meaning of those

3

terms were within the understanding of the average juror. *See, e.g.*, *United States v. Somsamouth*, 352 F.3d 1271, 1275–78 & n.2 (9th Cir. 2003); *United States v. Shryock*, 342 F.3d 948, 986–87 (9th Cir. 2003). These are undoubtedly common words, but the need to define them for the jury had nothing to do with the words' putative obscurity. To the contrary, the words needed defining because the jurors, based only on their lay experiences, could have ascribed many *different* meanings to each term.

"Marriage" encompasses many different concepts even within this country, depending on the governing jurisdiction(s). Without being told, the jury could not have known that it was Mexican law that determines whether Galvez's parents were legally married, or what that law requires; only with an appropriate instruction could the jury even know the appropriate factual question to answer. "Residence," too, is capable of multiple definitions, only one of which—an individual's "principal, actual dwelling place in fact, without regard to intent," *Mrvica v. Esperdy*, 376 U.S. 560, 565 (1964) (quoting 8 U.S.C. § 1101(a)(33)); *see also* Nationality Act of 1940, Pub. L. No. 76-853, § 104, 54 Stat. 1137, 1138—actually applies to the determination of whether Rosario derived U.S. citizenship from Melchor.

4

In sum, the requested instructions were supported by the law, had some foundation in the evidence, and were not adequately covered by the other instructions, either singly or in combination. The district court therefore erred in refusing to give them. *See Thomas*, 612 F.3d at 1120; *Bello-Bahena*, 411 F.3d at 1088–89. We vacate Galvez's conviction and remand for a new trial. *Bello-Bahena*, 411 F.3d at 1091 n.6.

2. We review de novo Galvez's contention that the district court erred in denying his Rule 29 motion for a judgment of acquittal. *See United States v. Sullivan*, 522 F.3d 967, 974 (9th Cir. 2008); *see also McDaniel v. Brown*, 130 S. Ct. 665, 673 (2010); *United States v. Nevils*, 598 F.3d 1158, 1163 (9th Cir. 2010) (en banc). Viewing the evidence in the light most favorable to the prosecution, as we must, *see McDaniel*, 130 S. Ct. at 673, we hold that the motion was properly denied. The jury could have disbelieved entirely Galvez's testimony about his parents not being legally married, particularly given that he told an immigration judge that his parents "were married," without caveat. Similarly, it could have disbelieved Galvez's testimony about his grandfather returning to the United States to work in the fields. If it disbelieved either part of Galvez's testimony, the jury would have concluded that Galvez did not derive citizenship and that he is, in fact, an alien. Accordingly, the district court did not err in holding that there was

5

sufficient evidence of Galvez's alienage to convict. *See id.*; *Nevils*, 598 F.3d at

1163.

**CONVICTION VACATED AND REMANDED.**

United States of America  v. Galvez-Guerrero, No. 10-50520

Judge WHYTE, concurring in part and dissenting in part.

I concur in the majority's holdings that the district court erred in refusing to give the requested instruction regarding the meaning of "residency," and that the district court did not err in denying Galvez's Rule 29 motion for a judgment of acquittal.  However, I disagree that the district court erred in refusing to give the requested instruction regarding "marriage" in order to explain the meaning of "out-of-wedlock," because I believe that the term "out-of-wedlock" was understandable and clear without further definition.

The district court instructed that "a person born abroad out of wedlock to a U.S. citizen mother, after 1952, is automatically a U.S. citizen at birth if the mother was physically present in the United States continuously for 12 months prior to the child's birth . . . ."  The court declined to further instruct the jury that "[i]n considering whether the government has proven beyond a reasonable doubt that Mr. Galvez is not a citizen you may consider that marriage in Mexico requires civil formalities.  A religious marriage ceremony or a common law marriage alone does not result in a valid marriage."

The defense's theory was that the government failed to prove beyond a reasonable doubt that Galvez's parents were legally married.  During his deportation proceedings before an immigration judge, Galvez had testified that his

parents were married at the time of his birth.  At trial, the defense attempted to discredit this admission by eliciting testimony that Galvez did not know whether his parents were legally married, and that there was no evidence (other than Galvez's admission to the immigration judge) that Galvez's parents were legally married as opposed to simply living together.  It was never suggested during trial that Galvez's parents had participated in a religious ceremony or any other type of ceremony resulting in a purported union that did not constitute a marriage because it lacked civil formalities.  Nor was evidence offered or did either the government or defense argue that Galvez's parents were married because they had some sort of common law marriage.  The only type of relationship between couples other than marriage that was mentioned was a "free union" in Mexico which was described without dispute as meaning "to live as a couple but not married."  Galvez, in fact, stated he was living in a "free union" when his daughter was born.

I do not believe the jury needed guidance on the meaning of "out of wedlock" or "marriage."  The majority holds that the words needed defining "because the jurors, based on only their lay experiences, could have ascribed many *different* meanings to each term."  Since under the facts presented there was no basis for a juror to find that Galvez's parents were "married" but in some way not recognized as lawful, I find that the instruction offered was not needed to

2

adequately define "marriage" and thus to explain the meaning of "out of wedlock." The jury had the option of finding that Galvez's parents were either married or not married as the term is commonly understood and it found that they were married.