**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
            *Plaintiff-Appellee*,

v.

ROSARIO VAZQUEZ-HERNANDEZ,
AKA Jose Alfredo Jimenez-Valdez,
            *Defendant-Appellant.*

No. 15-10009

D.C. No.
4:14-cr-00772-
RCC-CRP-1

Appeal from the United States District Court
for the District of Arizona
Raner C. Collins, Chief District Judge, Presiding

Argued and Submitted September 12, 2016
San Francisco, California

Filed March 3, 2017

Before: Ronald M. Gould and Marsha S. Berzon, Circuit
Judges, and William K. Sessions, III,[*] District Judge.

Opinion by Judge Sessions

---

[*] The Honorable William K. Sessions III, United States District
Judge for the District of Vermont, sitting by designation.

## SUMMARY[**]

### Criminal Law

The panel vacated a conviction for attempted illegal reentry under 8 U.S.C. § 1326 and remanded for entry of a judgment of acquittal.

The panel held that the district court committed plain error affecting the defendant's substantial rights by failing to instruct the jury that in order to be found guilty of attempted illegal reentry the defendant must have had the specific intent to reenter the United States free from official restraint.

The panel held that even if the jury applied the correct legal standard, no rational trier of fact could have found the essential elements of attempted illegal reentry beyond a reasonable doubt. The panel wrote that if properly instructed on the official restraint doctrine, no rational jury could have concluded beyond a reasonable doubt that the defendant was free from official restraint in the pre-inspection area, or that he intended to be simply by entering that area. The panel wrote that there is likewise insufficient evidence in the record to support the defendant's guilt on the theory that he intended to go beyond the pre-inspection area so as to be free to go at large and at will within the United States.

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

**COUNSEL**

Henry L. Jacobs (argued), Law Offices of Henry Jacobs PLLC, Tucson, Arizona, for Defendant-Appellant.

Erica Anderson McCallum (argued) and Elizabeth Berenguer, Assistant United States Attorneys; Robert L. Miskell, Appellate Chief; John S. Leonardo, United States Attorney, United States Attorney's Office, Tucson, Arizona; for Plaintiff-Appellee.

**OPINION**

SESSIONS, District Judge:

Defendant-appellant Rosario Vazquez-Hernandez appeals his conviction for attempted illegal reentry under 8 U.S.C. § 1326 on the ground that there was insufficient evidence to support his conviction. Vazquez-Hernandez also notes that the district court's instruction at trial failed to properly inform the jury of the essential elements of the offense.

The lack of an instruction to the jury that Vazquez-Hernandez had to have a conscious desire to reenter the United States free from official restraint to be found guilty of the crime of attempted illegal reentry was plain error. Moreover, we conclude that even if the jury applied the correct legal standard, the trial record provides insufficient evidence to allow any rational trier of fact to find the essential elements of attempted illegal reentry beyond a reasonable doubt. Therefore, we vacate Vazquez-Hernandez's conviction and remand to the district court to enter a judgment of acquittal.

## I. Background

Prior to his conviction, Vazquez-Hernandez, a citizen of Mexico, frequently earned money washing car windows at the Mariposa port of entry into the United States in Nogales, Arizona. The U.S. inspection station at the Mariposa port of entry lies on U.S. territory, about 100 yards north of the border with Mexico. As a result, the United States invites foreign nationals and U.S. citizens traveling in vehicles to enter U.S. territory prior to their inspection by immigration officials. Pedestrians are invited to enter the pre-inspection area through a separate, designated lane, and are generally not permitted in the vehicle lanes for safety reasons. U.S. Border Patrol agents have on occasion, however, permitted individuals they presume to be U.S. citizens to enter the northbound vehicle lanes on foot. Although also not officially permitted, vendors and window washers commonly enter the pre-inspection area from Mexico on foot, touting their wares and services to stopped vehicles.

The pre-inspection area is walled off on all sides except at the U.S. border with Mexico and at the Mexican and U.S. inspection points, and is monitored by hundreds of U.S. government cameras. United States "outbound operations" officers, armed with automatic rifles, monitor southbound lanes north of the Mexican government's inspection points. Law enforcement agents stationed at the border sometimes screen individuals entering the pre-inspection area for those who could pose a safety threat and prevent them from entering the pre-inspection area.

Subject to this intermittent screening and control, foreign nationals enter the pre-inspection area on U.S. territory on a daily basis, either in vehicles or on foot. Occasionally, U.S. Border Patrol agents attempt to arrest and detain individuals present on foot in the pre-inspection area who the agents

believe, based on their behavior and appearance, do not "have legal status" in the United States, without inquiring about their intent to go past the port of entry. When approached by Border Patrol agents, vendors and other individuals who do not intend to enter the United States beyond the pre-inspection area often flee the pre-inspection area and return to the Mexican side of the border. Pedestrians attempting to enter the United States without inspection sometimes run up the southbound lanes, bypassing the U.S. inspection points.

Before his arrest and conviction in 2014, Vazquez-Hernandez was previously removed from the United States three times, and was once previously convicted of illegal reentry. He was first removed in 2005, before he began his window-washing work. Since he began working at the Mariposa port of entry, he has twice been arrested in the pre-inspection area and subsequently deported, in 2010 and 2013. After his 2010 arrest, he was charged with illegal reentry and pled guilty to the offense.

Around the time he was arrested in 2014, Vazquez-Hernandez entered the pre-inspection area at the Mariposa port of entry to wash windows almost every day, including on the weekends and in the afternoons and evenings. On April 5, 2014, two Border Patrol agents, Agent Adam Erfert and Joshua Thomas, saw Vazquez-Hernandez on surveillance cameras. The agents testified at trial that they became suspicious of Vazquez-Hernandez's intentions because he appeared to be looking around and monitoring his environment, and because of his attentiveness and proximity to the southbound vehicle lanes. The two agents approached Vazquez-Hernandez and, despite Vazquez-Hernandez's efforts to evade the agents' grasp, arrested him. Vazquez-Hernandez was eventually charged with attempted

illegal reentry in violation of 8 U.S.C. § 1326 in a superseding indictment returned on October 1, 2014. The case proceeded to trial.

At trial, the district court judge instructed the jury on the elements of the offense of illegal reentry in the following manner:

> [T]he government must prove each of the following elements beyond a reasonable doubt: First, the defendant was removed and/or deported from the United States; second, the defendant had the conscious desire to reenter the United States without consent; third, the defendant was an alien at the time of his attempted reentry into the United States; fourth, the defendant had not obtained the consent of the Attorney General or the Secretary of the Department of Homeland Security to reapply for admission into the United States; and fifth, the defendant did something that was a substantial step toward committing the crime.

During the course of argument for a directed verdict, and outside the presence of the jury, the judge stated to counsel that the only question at issue was the defendant's intent.[1]

---

[1] Crossing the United States border from Mexico is a substantial step towards the commission of attempted illegal reentry. *United States v. Leos-Maldonado*, 302 F.3d 1061, 1063–64 (9th Cir. 2002). Because Vazquez-Hernandez acknowledged that he had formally crossed the border to enter into the pre-inspection area, the district court instructed the parties not to focus on the "substantial step" element of the charged offense.

After receiving the instruction on the elements of attempted illegal reentry, the jurors expressed confusion about the intent requirement. The jurors asked, "Does, as a matter of [l]aw, illegal reentry into the United States include the element of intent to stay in the United States? Or is there no mention of such intent in the statute?" In response, the court referred the jurors to the instruction it had already given on the elements of the offense. Vazquez-Hernandez did not object to the instructions at trial.

On October 8, 2014, the jury convicted Vazquez-Hernandez of attempted illegal reentry, the sole count in the superseding indictment. On December 18, 2014, the district court sentenced Vazquez-Hernandez to 40 months of imprisonment followed by three years of supervised release and imposed a $100 special assessment. Vazquez-Hernandez filed this timely appeal.

## II. Discussion

### A. Improper jury instruction

Although this Court generally reviews a jury instruction that misstates the elements of a statutory crime de novo, we review an instruction for plain error in the absence of a timely objection to it below.[2] *United States v. Kilbride*,

---

[2] Although Vazquez-Hernandez did not independently challenge the jury instruction on appeal, he did maintain that the instruction was erroneous, as part of his argument that no jury could have determined that he entered the United States free from official restraint, as required by law. Whether the validity of the instruction was adequately raised on appeal is debatable. In any event, although we typically refrain from addressing issues that neither party properly raised on appeal, we may do so in cases of a plain error that affects substantial rights. *See United States v. Olano*, 507 U.S. 725, 732 (1993); Fed. R. Crim. P. 52(b). We

584 F.3d 1240, 1247 (9th Cir. 2009). In order to conclude that plain error exists, we must find "(1) an error that is (2) plain and (3) affects substantial rights." *Id.* (quoting *United States v. Peterson*, 538 F.3d 1064, 1071 (9th Cir. 2008)). Where these conditions are met, "we may only exercise our discretion to correct the error if it seriously affects the fairness, integrity or public reputation of judicial proceedings." *Id.* (quoting *Peterson*, 538 F.3d at 1072).

### i.   Plain error

The district court's failure to include an instruction on freedom from official restraint at summation constituted plain error. The Fifth and Sixth Amendments require criminal convictions to rest upon a jury determination that the defendant is guilty of every element of the crime with which he is charged beyond a reasonable doubt. *United States v. Gaudin*, 515 U.S. 506, 509–10 (1995).   Jury instructions misstate the essential elements of an offense when they do not adequately link the intent element of a crime with the required object of that intent.  *See United States v. Montoya-Gaxiola*, 796 F.3d 1118, 1122–24 (9th Cir. 2015) (finding plain error because jury instruction did not specify that, where defendant was charged with possession of an unregistered firearm, the jury must find that the defendant knew of the features of his weapon that

_____

exercise our discretion to address these types of errors if the error "seriously affect[s] the fairness, integrity or public reputation of judicial proceedings." *Olano*, 507 U.S. at 736 (quoting *United States v. Atkinson*, 297 U.S. 157, 160 (1936)). Since the standard by which we review this jury instruction on the merits aligns precisely with this preliminary question under Federal Rule of Criminal Procedure 52(b), we conclude that we have the power to review the instructions for the same reasons that we provide for correcting the instructions in this case. *See infra*, 16 n.4.

brought it within the definition of a firearm under the criminal statute, rather than knowing that he had a weapon which happened to have such features, unbeknown to the defendant); *United States v. Cherer*, 513 F.3d 1150, 1155 (9th Cir. 2008) (finding error in jury instructions regarding the elements of a sex crime committed towards a minor where the instruction failed to appropriately connect the requisite state of mind, knowledge, with the statute's object, a minor victim).

The crime of attempted illegal reentry under 8 U.S.C. § 1326 is a specific intent crime that requires proof beyond a reasonable doubt that the defendant had "the specific intent 'to reenter without consent.'" *United States v. Lombera-Valdovinos*, 429 F.3d 927, 929 (9th Cir. 2005) (quoting *United States v. Leos-Maldonado*, 302 F.3d 1061, 1063 (9th Cir. 2002)). For the purposes of § 1326, "entry" has a distinct legal meaning: "[a]n alien has not entered the United States under § 1326 unless he does so 'free from official restraint.'" *Id.* at 928 (quoting *United States v. Gracidas-Ulibarry*, 231 F.3d 1188, 1191 n.3 (9th Cir. 2000) (en banc)). Accordingly, to convict a defendant of attempted illegal reentry, the Government must "prove beyond a reasonable doubt that [the defendant] crossed into the United States with the specific 'intent to enter the country free from official restraint.'" *United States v. Argueta-Rosales*, 819 F.3d 1149, 1156 (9th Cir. 2016) (quoting *Lombera-Valdovinos*, 429 F.3d at 928).

The jury instructions here omitted this element of attempted illegal reentry. The district court instructed the jury only that it must find that Vazquez-Hernandez "had the conscious desire to reenter the United States without

consent," making no mention of the intent to be free from official restraint. This was plain error.[3]

*Gracidas-Ulibarry* is not to the contrary. There, this Court held that "an explanation of the meaning of specific intent is necessary to give guidance as to the proper jury instruction for" attempted illegal reentry. *Gracidas-Ulibarry*, 231 F.3d at 1195. Although *Gracidas-Ulibarry* did not specifically explain that § 1326 requires proof that the defendant attempt to enter "free from official restraint," there was no dispute concerning whether the defendant in that case was under official restraint, or whether he intended to proceed past the border checkpoint. *See id.* at 1191. Here, in contrast, greater elaboration on the specific intent requirement was necessary because the conditions of the pre-inspection area at the Mariposa port of entry, combined with

---

[3] This case does not involve a failure to define a term that was within the comprehension of the average juror. *United States v. Tirouda*, 394 F.3d 683, 688–89 (9th Cir. 2005), *as amended on denial of reh'g and reh'g en banc* (July 13, 2005) ("Whether a term in a jury instruction requires definition normally turns on whether it expresses a concept within the jury's ordinary experience. No prejudice results from a district court's failure to define a concept within the comprehension of the average juror.") (internal quotation omitted). The particular definition of the term "entry" in the context of § 1326 evades a "general reading." *See United States v. Pacheco-Medina,* 212 F.3d 1162, 1163 (9th Cir. 2000) ("[A] general reading would suggest that Pacheco did commit the crime because he surely left Mexico for the United States, and he just as surely was found on our soil after he came over the border fence. But as a matter of law it is not quite that easy because physical presence is not enough."). It is improbable that an average juror could correctly understand and apply the term "entry" in this context without a specific instruction that illegal reentry requires intent to enter free from official restraint. Nor is this a case in which the judge need not have instructed the jury to determine a particular question regarding an element of the crime because the judge was entitled to determine it himself as a matter of law. *See United States v. Mujahid*, 799 F.3d 1228, 1236–37 (9th Cir. 2015).

Vazquez-Hernandez's assertion that he did not intend to proceed beyond the inspection points, created ambiguity about Vazquez-Hernandez's intent to reenter free from official restraint.

Likewise, our cases finding no error in the omission of a jury instruction on freedom from official restraint when the defendant was "found in" the United States in violation of § 1326 do not govern here. *See e.g.*, *United States v. Castellanos-Garcia*, 270 F.3d 773, 777 (9th Cir. 2001) (declining to require a trial judge to instruct a jury on the "free from official restraint" requirement for entry in a case alleging that the defendant was "found in" the United States in violation of § 1326, where the defendant did not point to evidence that would suggest that his entry was *not* free from official restraint). *But see United States v. Bello-Bahena*, 411 F.3d 1083, 1088–91 (9th Cir. 2005) (remanding for new trial where trial judge failed to offer the defendant's jury instruction regarding "free from official restraint" at trial for being "found in" the United States in violation of § 1326, where defendant's theory that he was not free from official restraint because he was subject to constant surveillance had a basis in the evidence). We have long recognized that "§ 1326 sets forth three distinct offenses: 'enter,' 'attempt to enter,' and 'found in.'" *United States v. Pacheco-Medina*, 212 F.3d 1162, 1165 (9th Cir. 2000). Although "an entry, as defined legally, is required before a person is 'found in' the United States," *id.* at 1166, "the Government does not need to charge or prove voluntary entry in a § 1326 'found in' offense." *United States v. Rivera-Sillas*, 417 F.3d 1014, 1018–19 (9th Cir. 2004), *amended* (9th Cir. 2005). Accordingly, because the elements that the government is required to prove in "found in" cases are not directly parallel to those required to prove attempted illegal reentry, our precedents finding no error where jury instructions did not

describe the "free from official restraint" requirement in "found in" cases do not bear on the necessary instructions for attempted illegal reentry cases.

### ii. The error affected Vazquez-Hernandez's substantial rights

The lack of a jury instruction regarding freedom from official restraint affected Vazquez-Hernandez's substantial rights. An error affects substantial rights if there is "a reasonable probability that the error affected the outcome of the trial." *United States v. Marcus*, 560 U.S. 258, 262 (2010). In determining the likelihood that an erroneous instruction affected the outcome of a trial, "[w]e review the jury instructions as a whole, not only the erroneous instructions. We may also examine the arguments made by the parties." *United States v. Garrido*, 713 F.3d 985, 995 (9th Cir. 2013) (internal quotation and citation omitted). Moreover, where a jury instruction permits a conviction on either of two alternative theories, one of which is later found to be unconstitutional, the error affects the defendant's substantial rights if there is a reasonable probability that the jury convicted the defendant on the invalid theory. *Id.*

Here, the government advanced two theories of guilt at summation. The district court's instructions permitted the jury to convict Vazquez-Hernandez on either of those theories. Specifically, the government argued that the jury could convict Vazquez-Hernandez if it found that "he had the purpose of illegally reentering the United States, whether it was to make a little money from his window washing business or to scout for traffickers or flee north in the southbound lanes." Thus, the prosecution indicated that either entry into the pre-inspection area with the intent to wash windows and then return to Mexico, *or* entry with the intent to move into the United States past the points of

inspection, would constitute an "entry" within the meaning of the intent element of the crime.

Our case law clearly does not support the first of those theories. First, the official restraint doctrine was intended to safeguard the presence of uninspected immigrants in precisely the type of area in to which Vazquez-Hernandez entered and where he remained. The freedom from official restraint requirement addresses the practical concern that failing to require such a finding would lead to the criminalization of individuals who arrive at a port of entry but have not yet had an opportunity to apply for inspection. *See Argueta-Rosales*, 819 F.3d at 1160 ("[T]he official restraint doctrine is a practical necessity . . . . We doubt that Congress intended to make criminals out of persons who, for any number of reasons, approach immigration officials at the border."); *United States v. Vasilatos*, 209 F.2d 195, 197 (3rd Cir. 1954) (explaining that because "in a literal and physical sense a person coming from abroad enters the United States whenever he reaches land, water or air space within the territorial limits of this nation," "freedom from official restraint must be added to physical presence before entry is accomplished") (cited with approval in *Argueta-Rosales*, 819 F.3d at 1160). The pre-inspection area at the Mariposa port of entry thus serves this function of allowing uninspected foreign nationals to assemble to accomplish a lawful entry.

Second, an alien is not free from official restraint when he is in an area that is subject to constant government surveillance. *Pacheco-Medina*, 212 F.3d at 1165; *United States v. Aguilar*, 883 F.2d 662, 681 (9th Cir. 1989), *superseded by statute on other grounds*, P.L. No. 99-603, 100 Stat. 3359, *as stated in United States v. Gonzalez-Torres*, 309 F.3d 594 (9th Cir. 2002) ("Continuous

surveillance by immigration authorities can be sufficient to place an alien under official restraint" for the purposes of applying the definition of entry to the crime of illegally bringing an alien into the United States). Here, the government's witnesses testified that the pre-inspection area was subject to surveillance by hundreds of cameras, with small blind spots, and was surrounded on all sides either by walls or law enforcement agents.

The only time that Vazquez-Hernandez was not under direct camera surveillance was when Border Patrol Agents Erfert and Thomas were approaching him, with knowledge of his location. Such a minor gap in surveillance is not sufficient to break an officer's "continuous observation" necessary to establish official restraint. *United States v. Gonzalez-Torres*, 309 F.3d 594, 599 (9th Cir. 2002) (finding that where Border Patrol agent observed a defendant from the moment he crossed the border, knew the trail on which the defendant and others were walking, and only lost sight of him "for a number of seconds," the defendant was under constant surveillance and therefore not free from official restraint). Moreover, Vazquez-Hernandez's attempt to evade arrest by running from the agents is not sufficient to deem him free from official restraint, because he was either subject to camera surveillance or within the officer's sight, or both, at the time he ran. *See Pacheco-Medina*, 212 F.3d at 1163–65 (finding no freedom from official restraint, and thus no entry under § 1326, when alien was subject to surveillance from the moment he crossed the border, even though he immediately ran away from an agent and "gave chase" rather than surrender to arrest).

Finally, the touchstone to determining whether a defendant is free from official restraint is whether the defendant was free to "go at large and at will within the

United States." *Id.* at 1164 (quoting *Ex parte Chow Chok*, 151 F. 627, 630 (N.D.N.Y.), *aff'd*, 163 F. 1021 (2d Cir. 1908)); *see Gonzalez-Torres*, 309 F.3d at 598. There is no doubt in this case that Vazquez-Hernandez was not free to travel at will beyond the points of inspection. The area was largely walled off from U.S. territory not subject to such surveillance and monitored by Border Patrol agents who attempted to stop individuals from proceeding into the United States without inspection. Therefore, given this evidence on the conditions of the pre-inspection area, no rational jury could have concluded beyond a reasonable doubt that Vazquez-Hernandez was free from official restraint in this area, or that he intended to be by entering it. Accordingly, the jury could not properly have sustained a conviction on this theory if it had been adequately instructed.

As we explain later, *see* pp. 18–20, the evidence that Vazquez-Hernandez intended to flee northward rather than stay in the pre-inspection area was exceedingly weak. Also, the jury's question to the judge indicated that its focus was on the first prosecution theory, concerning defendant's simple presence in the pre-inspection area. If the jury was focusing on the second theory, that the defendant intended to jump the fence and run north across the border, it would not have asked about intent to stay in the United States. It is therefore reasonably likely that the jury found that Vazquez-Hernandez only intended to enter the pre-inspection area, and, in reaching its verdict, relied on the alternative theory advanced by the prosecution and permitted by the inadequate jury instruction that Vazquez-Hernandez could be convicted with this more limited intent. In fact, the evidence did not establish that by intending to enter the pre-inspection area, Vazquez-Hernandez intended to enter free from official restraint, as would be required to convict him on that theory. Accordingly, there is a reasonable probability the erroneous

instruction, which permitted the jury to rely on a theory it should have discarded, impacted the outcome of the trial. Thus, the error affected Vazquez-Hernandez's substantial rights.

### iii. Miscarriage of justice

We exercise our discretion to correct the error in this case because the jury's possible reliance on a legally invalid theory constitutes a miscarriage of justice which would seriously affect "the fairness, integrity or public reputation of judicial proceedings." *Garrido*, 713 F.3d at 998 (finding that upholding a conviction where "the indictment, the jury instructions and the closing arguments at trial were permeated with the prohibited . . . theory" and where neither party argued their cases on a legally valid theory would constitute a miscarriage of justice) (internal quotations omitted). Permitting a conviction for attempted illegal reentry based on the intent to enter into only the pre-inspection area would undermine the fairness of our nation's inspection procedures and jeopardize the integrity of convictions sustained by courts presiding over border inspection areas. These pre-inspection areas have been established to facilitate our country's inspection procedures. Allowing law enforcement discretion to initiate a criminal process against some foreign nationals for crossing the border into this area without enunciating the intent to evade official surveillance could undermine the purpose of the illegal reentry statute.

For these reasons, the omission of the freedom from official restraint requirement from the jury instruction

constitutes plain error affecting Vazquez-Hernandez's substantial rights.[4] We reverse.

## B. Insufficient evidence to support the jury's verdict

Vazquez-Hernandez argues that there is insufficient evidence to support his conviction for attempted illegal reentry, a claim which, "if successful, would entitle him to a judgment of acquittal." *See United States v. Shetler*, 665 F.3d 1150, 1161 (9th Cir. 2011) (citing *United States v. Williams*, 547 F.3d 1187, 1195 (9th Cir. 2008)). Claims of insufficient evidence to support a jury verdict are reviewed de novo. *United States v. Antonakeas*, 255 F.3d 714, 723 (9th Cir. 2001). Evidence supporting a conviction is sufficient if, "viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original). Vazquez-Hernandez's claim that the district court erred in denying his motion for judgment of acquittal pursuant to Federal Rule of Criminal Procedure 29 is also reviewed de novo. *Castellanos-Garcia*, 270 F.3d at 775.

We conclude that no rational trier of fact properly instructed on the elements of the crime could have found that Vazquez-Hernandez possessed the required mens rea for attempted illegal reentry beyond a reasonable doubt. To be guilty, Vazquez-Hernandez must have intended to enter the United States free from official restraint and without the consent of the Attorney General.

---

[4] For these same reasons, we exercise our discretion to review the jury instruction, notwithstanding that Vazquez-Hernandez did not directly raise the issue in his opening brief before this court. *See Olano,* 507 U.S. at 732, 736; *see supra*, pp. 7–8 n. 2.

As discussed above, if properly instructed on the official restraint doctrine, no rational jury could have concluded beyond a reasonable doubt that Vazquez-Hernandez was free from official restraint in the pre-inspection area, or that he intended to be simply by entering that area.

Likewise, there is insufficient evidence in the record to support Vazquez-Hernandez's guilt on the theory that he intended to go beyond the pre-inspection area so as to be free to go at large and at will within the United States. The testimony of Agents Erfert and Thomas as to their observations and beliefs about Vazquez-Hernandez's intentions is insufficient to prove beyond a reasonable doubt that Vazquez-Hernandez intended to proceed outside the pre-inspection area. In particular, Agent Erfert stated that Vazquez-Hernandez appeared to be "really worried about who was around him and what's going on," and Agent Thomas stated that Vazquez-Hernandez looked over the wall dividing the northbound and southbound lanes once and that he looked distracted while washing windows.

Vazquez-Hernandez could have looked around cautiously to avoid arrest even if he did not intend to dart northward past the pre-inspection area on the southbound lanes. Vazquez-Hernandez had been arrested and convicted for washing windows in the pre-inspection area before, and it would be logical for him to want to avoid the possibility of another conviction.

Consistent with Vazquez-Hernandez's experience, Agents Thomas and Erfert testified that they sometimes attempt to arrest pedestrian vendors and window-washers rather than warning them that they are not authorized in the area. When approached, pedestrian vendors typically try to avoid arrest by running back to the Mexican side of the border. In light of these customary law enforcement

practices, Vazquez-Hernandez's apparent cautiousness was not sufficiently probative of an intent to run north past the pre-inspection area.

Agent Erfert speculated that Vazquez-Hernandez was attempting to see if there were any Border Patrol Agents in the southbound lanes, and that individuals who attempt to enter the United States past the pre-inspection area often do so by running up the southbound lanes.[5] However, Vazquez-Hernandez did not attempt to run northward past the inspection points after he saw that the southbound lanes were clear of law enforcement officers. Rather, he continued to wash windows after looking over the wall cautiously. Moreover, Agent Erfert testified that he never saw the appellant attempt to jump any of the fences surrounding the pre-inspection area that would lead into contiguous U.S. territory.

Circumstantial evidence also undermines the inference that Vazquez-Hernandez intended to proceed past the inspection points. On the day he was arrested, Vazquez-Hernandez carried with him only the supplies necessary to carry out window-washing activities. He had only a few coins in his possession. Although Vazquez-Hernandez entered the pre-inspection area around 7:30 p.m., when it was starting to get dark, he did not enter under the full cover of darkness. He also provided a plausible explanation for his arrival at the pre-inspection area late in the day: that he came to work after picking up his daughter from school. Although the agents testified that Vazquez-Hernandez was wearing a sweater or jacket, which one believed was unusual given the warm weather, the inference that he was dressed for a long

---

**5** In contrast, Agent Thomas testified that he did not know whether the appellant's intent was to go beyond the port of entry.

journey is weak. The inference is similarly weak that, because an agent saw Vazquez-Hernandez set a water bottle down on the dividing wall on one occasion, Vazquez-Hernandez was not using any water, and was not really there to wash windows. We conclude, therefore, that no rational juror could find beyond a reasonable doubt that Vazquez-Hernandez intended to travel northward beyond the points of inspection.

## III. Conclusion

In light of the foregoing analysis, we conclude that the district court's instruction failed to properly state the essential elements of attempted illegal reentry and permitted the government to advance, and the jury to convict on, an invalid theory of guilt. This was plain error. Because we further hold that no properly instructed, rational trier of fact could find Vazquez-Hernandez guilty of the crime of attempted illegal reentry, we reverse the defendant's conviction and remand to the district court to enter a judgment of acquittal.

**REVERSED and REMANDED.**