**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

FILED

JUL 11 2018

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 16-50387 |
| Plaintiff-Appellee, | D.C. No. 2:14-cr-00448-MWF-1 |
| v. | |
| FELICIA MUHAMMAD, | MEMORANDUM[*] |
| Defendant-Appellant. | |

Appeal from the United States District Court
for the Central District of California
Michael W. Fitzgerald, District Judge, Presiding

Argued and Submitted June 5, 2018
Pasadena, California

Before: WARDLAW and PAEZ, Circuit Judges, and CHHABRIA,[**] District Judge.

Felicia Muhammad ("Muhammad") appeals her conviction of five counts of making a false statement to a financial institution in violation of 18 U.S.C. § 1014. We have jurisdiction pursuant to 28 U.S.C. § 1291, and we affirm.

---

[*] This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

[**] The Honorable Vince Chhabria, United States District Judge for the Northern District of California, sitting by designation.

**1.** Muhammad argues that the jury instruction on the elements of liability for causing an act to be done under 18 U.S.C. § 2(b) was erroneous because it omitted an essential element of the underlying offense for loan fraud—that she knew that the document contained the charged false statement. We review for plain error because the parties jointly submitted the challenged jury instruction. *See United States v. Cain*, 130 F.3d 381, 383–84 (9th Cir. 1997); *United States v. Perez*, 116 F.3d 840, 842, 845 (9th Cir. 1997) (en banc). To establish plain error, Muhammad must show "(1) an error that is (2) plain and (3) affects substantial rights." *United States v. Vazquez-Hernandez*, 849 F.3d 1219, 1225 (9th Cir. 2017) (citation omitted). "Where these conditions are met, we may only exercise our discretion to correct the error if it seriously affects the fairness, integrity or public reputation of judicial proceedings." *Id.* (citation omitted).

Even if the instruction were erroneous and plainly so, it did not affect Muhammad's substantial rights. An error affects substantial rights "if there is 'a reasonable probability that the error affected the outcome of the trial.'" *Id.* at 1227 (quoting *United States v. Marcus*, 560 U.S. 258, 262 (2010)). In determining the likelihood that an erroneous instruction affected the outcome, we review the arguments made by the parties, *id.*, and whether the government presented "substantial evidence" of the missing element, *United States v. Conti*, 804 F.3d 977, 981–82 (9th Cir. 2015). "Moreover, where a jury instruction permits a conviction

on either of two alternative theories, one of which is later found to be unconstitutional, the error affects the defendant's substantial rights if there is a reasonable probability that the jury convicted the defendant on the invalid theory." *Vazquez-Hernandez*, 849 F.3d at 1227.

Both parties emphasized throughout the trial that the "crux of the case" was Muhammad's knowledge, or lack thereof, that the statements were false. As defense counsel described to the jury during closing argument, "What you do have to figure out is: Did she know that there was false information in there when she signed them?" Thus, the jury was primed to focus on whether Muhammad had the requisite knowledge for loan fraud.

In addition, the government presented "substantial evidence" that Muhammad had the requisite knowledge: Muhammad signed, before notaries, single-page occupancy certifications; Muhammad was a licensed real estate agent; and Muhammad told a Long Beach police officer that she was aware that she would not be approved for such large loans using her actual financial information, but also that she would be paid $18,000 for her participation in what they agreed to call a "scam." The FBI Agent who interviewed Muhammad testified that when he asked her why she signed the occupancy certification if she did not intend to occupy the property, she said "she didn't think the document mattered" and "she didn't think anyone particularly cared if she wasn't going to live in the property."

Finally, Muhammad concedes that the instructions regarding the alternative theories of liability—that she committed substantive loan fraud or that she aided and abetted loan fraud—properly instructed the jury that Muhammad needed to have known the documents contained false statements. Given the substantial evidence of Muhammad's knowledge, we conclude there is not a reasonable probability that the jury convicted Muhammad on the theory of causing liability rather than substantive loan fraud or aiding and abetting liability. *See Vazquez-Hernandez*, 849 F.3d at 1227.

**2.** Next, Muhammad argues that the district court abused its discretion by excluding a defense witness whose proffered testimony would have focused on a scheme similar to that alleged in the indictment in which the witness unwittingly served as a straw buyer for the same man, Femi Olgun, as Muhammad. Defense counsel argued that this testimony would have gone to Olgun's pattern or method of recruiting innocent people and keeping them in the dark about the fraudulent loan scheme. "[A] district court abuses its discretion when it bases its decision on an erroneous view of the law or a clearly erroneous assessment of the facts." *United States v. Rahm*, 993 F.2d 1405, 1410 (9th Cir. 1993) (citing *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 405 (1990)).

We agree with Muhammad that the district court abused its discretion by excluding the defense witness under Federal Rule of Evidence 404(b). In its ruling,

4

the district court explained that because the government would not be allowed to offer testimony that another straw buyer working with Olgun had *known* that the loan documents contained false information, it would not allow Muhammad to offer the inverse as a matter of symmetry. This was an error of law. We have repeatedly emphasized that "the standard of admissibility when a criminal defendant offers similar acts evidence as a shield need not be as restrictive as when a prosecutor uses such evidence as a sword." *United States v. Espinoza*, 880 F.3d 506, 516 (9th Cir. 2018) (citation omitted).

However, "[e]ven though evidence is admissible under 404(b), it may nonetheless be excluded under Rule 403's balancing test, which weighs the 'probative value' of the evidence against the 'danger of unfair prejudice.'" *United States v. Cruz-Garcia*, 344 F.3d 951, 956 (9th Cir. 2003). Here, the district court concluded that even if the witness's testimony was admissible under Rule 404(b), it should be excluded under Rule 403's balancing test because there was "just too much risk . . . that the jury would use it for an improper purpose implying that the implicit state of mind of this other person should be imputed to this defendant." In light of the "considerable deference" we give to district court decisions to exclude evidence under Rule 403, *United States v. Hankey*, 203 F.3d 1160, 1167 (9th Cir. 2000) (citation omitted), we conclude that this was not an abuse of discretion.

**3.** Finally, Muhammad contends that the district court abused its discretion

by admitting evidence regarding Muhammad's Section 8 housing and related testimony. The government introduced Muhammad's annual Section 8 housing certifications, in which she certified that she lived in subsidized housing in Long Beach, and a Notice of Intended Action sent to Muhammad after the Long Beach Housing Authority discovered the loans in Muhammad's name. After receiving the Notice, Muhammad filed a police report with the Long Beach police, claiming that her identity had been used without her permission to purchase the homes. When Muhammad called to follow up on the police report, she connected with Officer Sanchez, to whom she ultimately admitted to participating in a "scam" related to the loans. When Officer Sanchez asked whether Olgun had used her information for other purposes, Muhammad explained that she had signed a lease for a BMW for Olgun as well. At the January 2010 administrative hearing regarding the termination of her housing benefits, Muhammad discussed the loans in question and explained that although she signed the loan applications, she did not live at those properties. She also admitted to signing a lease for a BMW on behalf of Olgun.

The district court did not abuse its discretion by concluding that the Section 8 housing certifications were direct evidence that Muhammad made false statements: she indicated in the loan documents that she would occupy the properties but certified to the Housing Authority that she lived elsewhere. The government was permitted to introduce these certifications through the housing coordinator for the

6

Long Beach Housing Authority to provide appropriate context. *See United States v. Daly*, 974 F.2d 1215, 1217 (9th Cir. 1992).

Nor did the district court abuse its discretion by concluding that the Notice of Intended Action and identity theft report were "inextricably intertwined" with the underlying offense of loan fraud because that information was "necessary [to admit] in order to permit the prosecutor to offer a coherent and comprehensible story regarding the commission of the crime." *United States v. Wells*, 879 F.3d 900, 928 (9th Cir. 2018) (alterations in original) (citation omitted). Appropriate context includes "the circumstances under which particular evidence was obtained." *United States v. Vizcarra-Martinez*, 66 F.3d 1006, 1012–13 (9th Cir. 1995). Accordingly, the government was permitted to introduce evidence that would help the jury understand the context in which Muhammad met the Long Beach police officer and allegedly confessed to signing the documents.

Finally, the district court did not abuse its discretion by admitting testimony regarding the BMW lease application. This testimony was admissible as non-character evidence under Rule 404(b) going to Muhammad's knowledge that the loan applications contained false information. When offered by the government against a defendant, evidence of prior bad acts is admissible under Rule 404(b) if it "(1) tends to prove a material point; (2) is not too remote in time; (3) is based upon sufficient evidence; and, (4) in some cases, is similar to the offense charged." *United*

*States v. Banks*, 514 F.3d 959, 976 (9th Cir. 2008) (citation omitted).  The district court correctly concluded that all four requirements were satisfied with respect to this evidence.  First, participating in four, high-value straw-buyer schemes—the three home loans and the BMW lease—in under two months coupled with Muhammad's comments that she did not believe her loan applications would be approved based on her actual financial information suggests that Muhammad knew about the loan-fraud operation.  Second, the BMW lease application was submitted within one month of the charged conduct.  Third, the government cited sufficient evidence regarding the BMW lease application, including Muhammad's testimony at the termination hearing as well as her statement to Officer Sanchez.  And fourth, the alleged straw-buyer scheme evidenced by the car lease application is very similar to that alleged in the charged home loan applications.

**AFFIRMED.**