**NOT FOR PUBLICATION**

FILED

UNITED STATES COURT OF APPEALS

OCT 9 2018

FOR THE NINTH CIRCUIT

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 16-10135 |
| Plaintiff-Appellee, | D.C. No. 1:15-cr-00004-FMTG-1 |
| v. | |
| RODNEY M. KIDD, | MEMORANDUM* |
| Defendant-Appellant. | |

Appeal from the United States District Court
for the District of Guam
Frances Tydingco-Gatewood, Chief Judge, Presiding

Argued and Submitted September 12, 2018
San Francisco, California

Before: BERZON, RAWLINSON, and WATFORD, Circuit Judges.

Rodney Kidd, a former Air Force staff sergeant, appeals from his convictions for making a fraudulent claim against the United States, theft of government property, and making a false statement to a federal government agency. 18 U.S.C. §§ 287, 641, 1001. Kidd contends, among other things, that the evidence presented at trial was insufficient to support any of the three convictions.

---

\* This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

We agree with that contention.

This case involves the alleged misuse of Overseas Housing Allowance (OHA) funds, which Kidd received to pay for his off-base housing. The government charged Kidd after discovering his arrangement with his landlord, whereby Kidd retained a portion of his monthly rent to cover certain agreed-upon amenities. Each count required the government to prove that Kidd knew OHA funds could not be spent on those amenities or, at the very least, that he knew he was required to disclose the arrangement to the government agency in order to obtain OHA funds. The government did not introduce sufficient evidence from which a rational jury could infer that Kidd had knowledge of either of those things.

Kidd received limited written documentation explaining the permissible uses of OHA funds. *Cf. United States v. Olson*, 856 F.3d 1216, 1224 (9th Cir. 2017). Indeed, it was undisputed at trial that none of the written materials he received explained that the amenities at issue here were not allowed to be included as part of his rent. If anything, these documents suggested the opposite. For example, Kidd signed a form that promised he would "not negotiate with the landlord/owner, nor have the landlord/owner provide in the rental agreement, additional amenities *which are not available to the general public*." (Emphasis added). The evidence at trial did not permit the inference that the amenities at issue—a bundled package of cable, internet, and telephone service; housekeeping; and lawn services—were

not generally available to the public. Two housing office employees, Mr. Anderson and Ms. Diaz, testified that most servicemembers have access to these services. There was no evidence whatsoever regarding whether members of the general public had access to such amenities.

Nor did the government establish that Kidd was ever informed orally that the arrangement with his landlord was improper or needed to be disclosed. *Cf. United States v. Tatoyan*, 474 F.3d 1174, 1177 (9th Cir. 2007). The only evidence of any oral communications Kidd had with the housing office predated the initiation of the amenities agreement by over a year. Ms. Santos, who conducted that face-to-face meeting, did not testify at trial. The housing officers who did testify at trial—Anderson and Diaz—did not speak to Kidd, so they could not attest to what information (if any) had been conveyed to him. To the extent that the testimony of Anderson and Diaz could be deemed relevant to the state of Kidd's knowledge at all, it was highly confusing and was not directed at what Kidd was told or knew. They did assert in cursory fashion that Kidd's arrangement was impermissible. But they also testified that the housing agency "doesn't really involve itself in the negotiations of the terms of the lease," and they conceded that the agency is not concerned with whether landlords include the same amenities at issue as part of the rent for condominiums.

The government's strongest evidence on the issue of *mens rea* was Kidd's

failure to submit the separate amenities agreement along with the dual-lease addendum. *See United States v. Dearing*, 504 F.3d 897, 901 (9th Cir. 2007). As explained above, however, the government introduced no evidence that Kidd understood the complicated regulatory scheme or that he was adequately warned of the need to include documents beyond the lease itself. *Cf. Olson*, 856 F.3d at 1224. Given the state of the evidence at trial, this omission was no more consistent with a guilty mind than a good-faith misunderstanding or mere oversight. While "the government does not need to rebut all reasonable interpretations of the evidence that would establish the defendant's innocence," a verdict cannot rest, as it did here, on "mere speculation." *United States v. Nevils*, 598 F.3d 1158, 1164, 1167 (9th Cir. 2010) (en banc).

The district court erred by denying Kidd's motion for judgment of acquittal on Counts 2, 3, and 4.

**REVERSED.**

***U.S. v. Kidd***, No. 16-10135
**Rawlinson, Circuit Judge, dissenting:**

I respectfully dissent. This case was close, and under the applicable standard of review, close cases go in favor of the jury verdict.

When reviewing a conviction for sufficiency of the evidence, we view all evidence "in the light most favorable to the prosecution." *United States v. Vazquez-Hernandez*, 849 F.3d 1219, 1229 (9th Cir. 2017). After viewing the evidence in the light most favorable to the prosecution, we then ask whether "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* (citation omitted) (emphasis in the original).

As the majority acknowledged, housing officials testified that Rodney Kidd's arrangement was impermissible. Even if that testimony was cursory, it was up to the jury to decide how much weight to give that testimony. *See United States v. Espinoza*, 880 F.3d 506, 517 (9th Cir. 2018) (observing that "it is the role of the jury . . . to consider the evidence") (citation and alterations omitted).

The majority also acknowledges that Kidd failed to submit the separate amenities agreement to housing officials. When viewed in the light most favorable to the prosecution, this is persuasive evidence of guilty knowledge. *See United States v. Dearing*, 504 F.3d 897, 901 (9th Cir. 2007) (noting that "intent can be inferred from efforts to conceal the unlawful activity") (citation and alteration omitted). The majority's weighing of this evidence and deciding the "omission

was no more consistent with a guilty mind than a good-faith misunderstanding or mere oversight" strays from the appropriate standard of review.

Finally, there was additional evidence supporting the sufficiency of the jury's verdict, including Kidd's filing of a correct report immediately preceding the period in question and Kidd's subsequent termination of the amenities agreement. Viewing this evidence in the light most favorable to the prosecution, I am not prepared to say that *no* reasonable juror "could have found the essential elements of the crime beyond a reasonable doubt." *Vazquez-Hernandez*, 849 F.3d at 1229. As we noted in *Dearing*, 504 F.3d at 901, "direct proof of one's specific wrongful intent is rarely available [b]ut willfulness may be inferred from circumstantial evidence of fraudulent intent." (citations and internal quotation marks omitted). Inferences drawn from the circumstantial evidence in this case sufficed to support the conviction under the governing standard of review. I would affirm the judgment of the district court denying Kidd's motion for a judgment of acquittal.